UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CARRIE ANN CAPOLUPO,<br>　　　　　Plaintiff,<br>　　v.<br>KRISTIN EILLS, et al.,<br>　　　　　Defendants. | Case No. 18-cv-07458-RMI<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 21 |

Currently pending before the court is Defendants' Motion to Dismiss the First Amended Complaint. *Defs.' Mot.* (dkt. 21). Defendants argue that Plaintiff's operative complaint is due to be dismissed because Plaintiff fails to state cognizable claims, or in the alternative on the basis of qualified immunity. *Id.* at 8-21. All parties have consented to proceed before a magistrate judge (dkts. 5, 14, 44). For the reasons stated below, the court will grant Defendants' Motion to dismiss the First Amended Complaint, but the dismissal shall be without prejudice, and Plaintiff shall have leave to amend.

**PROCEDURAL AND FACTUAL BACKGROUND**

On December 10, 2018, Plaintiff, Carrie Capolupo, proceeding *pro se*, filed an original Complaint against two social workers, a Deputy County Counsel for Humboldt County, and Humboldt County itself, alleging violations of her rights to privacy and to the free exercise of her religion under the First and Fourth Amendments. *Compl.* (dkt. 1) at 1-12. Defendants moved to dismiss (dkts. 8, 13), and in lieu of a response, Plaintiff filed her First Amended Complaint ("FAC") (dkt. 19). Defendants once again moved to dismiss (dkt. 21), Plaintiff responded (dkt. 40), Defendants have replied (dkt. 41), and the Parties appeared for oral argument on March 26,

2019 (dkt. 43). Thereafter, on April 18, 2019, Defendants submitted a supplemental post-hearing brief regarding an issue of service that arose during oral argument, namely the effecting of proper service, as well as joinder and consent to proceed before a magistrate judge, for Defendant Enriquez-Paredes[1] (dkt. 46). Additionally, the court will note that while her First Amended Complaint (dkt. 19 at 1) is captioned as being brought by "Carrie Capolupo and Family," Plaintiff Capolupo clarified at oral argument (dkts. 42, 43) that she was the only plaintiff bringing this action.

The First Amended Complaint begins by relating that three social workers, Defendants Schneider, Enriquez-Paredes, and Ellis, entered Plaintiff's residence without removing their shoes. *FAC* (dkt. 19) at 2. Plaintiff then submits that by doing so, "Defendant[s] defiled Religious rugs and sacred space within the residence . . . [and] deprived plaintiff of her religions (sic) practice." *Id*. Further, the Amended Complaint states that all Defendants, acting under color of law, secured a faulty warrant to enter Plaintiff's residence on the basis of allegations of child abuse that Plaintiff contends were untrue and nothing more than the exercise of her religious customs. *Id*. In light of which, the operative complaint presents three claims. *See id*. at 8-19.

Plaintiff's first claim broadly asserts that Defendants violated her First Amendment religious freedoms by interfering with her religious practices, and then by retaliating against her for exercising her religious practices. *Id*. at 8-11. On August 7, 2017, at approximately 9:00 am, Plaintiff was in her home "performing her purification rituals [when] plaintiff heard a pounding on her front door which prevented plaintiff from finishing her purification rituals." *Id*. at 8. Plaintiff opened the door to find a number of police officers and two social workers; Plaintiff then demanded to see a warrant, and further insisted that the social workers and officers remove their shoes. *Id*. Plaintiff alleges that before she could see the warrant, the two social workers, Defendants Schneider and Enriquez-Paredes, "barged into Plaintiff['s] house forcefully regarding

---

[1] At the time that Plaintiff ventured to effect service of process on Defendant Enriquez-Paredes at his place of employment, he was no longer employed by Humboldt County. Nevertheless, after inquiry by the court during oral argument, Defendants noted on April 18, 2019, that "[D]efendant Juan Carlos Enriquez-Paredes (erroneously sued herein as "SW Enriquez") . . . has now filed his consent to the jurisdiction of this Court and hereby joins in [Defendants'] motion to dismiss . . ." *Defs.' Post-Hearing Br.* (dkt. 46) at 2.

2

the allegation made about her religious practice effecting (sic) her children." *Id*. Because Defendants Schneider and Enriquez-Paredes and a number of sheriff's deputies (none of whom were named as defendants in this action) entered Plaintiff's home "without removing their shoes as Plaintiff asked and walked all over Plaintiff's beds that are on the floor and Defendants walked over Plaintiff[']s alter where Plaintiff honor[s] her ancestors which is part of her spiritual practices," Plaintiff submits that this constituted "a complete defilement of her home and religious alter." *FAC* (dkt. 19) at 9. Plaintiff adds that although Defendants had secured a court order "to remove the children," that their entry into her home nevertheless placed a substantial burden on her religious practices. *Id*.

In this regard, Plaintiff alleges that Defendants Rory Kalin, Kristin[2] Ellis, and Humboldt County failed to adequately investigate the suggestion of child abuse or neglect as it pertains to Plaintiff's religious practices – alleging, essentially, that the court order for the removal of Plaintiff's child was based on a faulty investigation resulting in false or incorrect information about "a religion called Earth Center of Mannu (sic)" and its "purification rituals." *Id*. Plaintiff submits that Defendants secured the court order for removal of the child (for a medical check) based on nothing more than the family's religion, rendering the order invalid. *Id*. at 9-10. Plaintiff also alleges that because she had "enforced her right to remain silent" during a prior visit, that Defendants retaliated against her by securing, illegitimately, an order to remove her child for the purposes of a medical examination. *Id*. at 10. Plaintiff contends that a proper investigation into her religious practices would have revealed "the safety of indigenous customs," instead, she contends that Defendants' actions have "put substantial pressure on an adherent to modify her behavior and to violate her beliefs, a burden upon religion exist[s]." *Id*. at 11.

Plaintiff's second claim – brought under the Fourth Amendment, 42 U.S.C. § 1983, and the California Constitution (Art. I, § 13) – alleges, in part, the unlawful seizure and destruction of her property, but without identifying which item or items of property were seized, damaged, or destroyed. *Id*. at 11-16. Plaintiff also alleges that "[t]he temporary order for the removal of the

---

[2] In Plaintiff's pleadings, and in the caption of this case, Defendant Kristin Ellis has been so far incorrectly identified as "Kristen" Ellis. *See Defs.' Mot.* (dkt. 21) at 9.

children and not the plaintiff violated her fourth amendment rights of privacy and to be secure in her residence." *Id*. at 15. After certain unnamed sheriff's deputies and two social workers, namely, Defendants Schneider and Enriquez-Paredes, entered Plaintiff's residence, someone commanded Plaintiff to sit on the couch. *Id*. at 12. Plaintiff reports that she was told that Defendant Schneider would need to interview Plaintiff's son, and that the children needed to be examined by a medical professional. *Id*. Plaintiff demanded that her child not be interviewed without an attorney being present, and reports that she was prevented from calling for legal assistance when "one sheriff grabbed her phone out of her hand and said Plaintiff could not use her phone." *Id*. When Plaintiff attempted to object to her son being interviewed outside her presence, "[a]gain, the Sheriff told plaintiff to remain sitting on the couch," during which time Defendant Schneider interviewed Plaintiff's son in another room. *Id*. After Plaintiff "grabbed her video camera . . . Plaintiff began to film and asked the sheriff officers why they had lied about my neighbors calling about a door to my house being open. They remained silent." *Id*. Plaintiff then contends that Defendants Schneider and Enriquez-Paredes told Plaintiff that if she did not voluntarily accompany them to an emergency room for a medical examination of her child, that her child would be taken into custody for that purpose. *Id*. at 13. When Plaintiff asked for an explanation, she was reportedly told that during his interview with Defendant Schneider, Plaintiff's son had indicated "that he experience[d] physical force as punishment and he had a bruise on his face." *Id*. at 13-14. Plaintiff contends that Defendant Schneider later "admitted that there was no bruise on his face but it was a shadow or dirt." *Id*. at 14, 15. After arriving at the hospital, Plaintiff noticed that the sheriff's deputies were no longer present, and Defendants Schneider and Enriquez-Paredes now told Plaintiff that she was not in custody, and that doing the medical exam was not compulsory, but that failing to submit to the exam would amount to disobeying a court order. *Id*. at 14. In essence, Plaintiff claims that Defendants Schneider, Enriquez-Paredes, and Humboldt County (through its unnamed sheriff's deputies) "forced Plaintiff out of her residence by threats of removing her children and intimidations by the present (sic) and force of the sheriffs." *Id*. at 15.

Plaintiff's third claim – brought under the due process clauses of the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and the California Constitution (Art. I, § 7) – contends that she

4

was deprived of a liberty interest without notice or an opportunity to be heard, namely, the "fundamental property and liberty interests in acquiring, and remaining in, residential property." *Id*. at 16. In this regard, Plaintiff contends that she was denied due process when Defendants "remove[ed] and exclud[ed] Plaintiff from her homes without providing notice and an opportunity to be heard on the child abuse and neglect allegation." *Id*. at 17. Noting that "the affidavit was facially insufficient," and that the order was "erroneously issued . . . based solely on false allegations and no evidence . . . This put the mother in a state deprivation liberty (freedom) and property (children) without due process of law." *Id*. Plaintiff contends that because of Defendants' interference with her fundamental right as a parent to make decisions concerning the care, custody, and control of her children, that she has suffered emotional, psychological, and physical damage. *Id*. Plaintiff further alleges that Defendants executed the order after it had already expired; that is, Plaintiff alleges the order was valid for 3 days, but that it was not executed until the fourth day. *Id*. at 18. Plaintiff also complains that Defendants never sent her "a notice regarding the finding," and that she had to contact Defendant Schneider herself in order to "find out the anonymous tip of child abuse and neglect was unfound[ed]"; instead, Plaintiff submits that due process required Defendants Schneider and Enriquez-Paredes to "notify Plaintiff by certified mail." *Id*. at 18-19. Lastly, because she fears that Defendants will once again interfere with her religious practices in the event that there is another anonymous tip pertaining to child abuse, Plaintiff submits that Defendants and the general public should be enjoined from anonymously complaining about her religious practices. *Id*. at 19.

**STANDARD OF REVIEW**

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); thus, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party," *Wyler Summit Partnership v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998), the court is not required to accept as

true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, mere recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Additionally, it should be noted that courts construe *pro se* pleadings liberally, interpreting them to raise the strongest arguments they suggest. *See Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("[c]ourts have a duty to construe *pro se* pleadings liberally, including *pro se* motions"); *cf. Wilwording v. Swenson*, 404 U.S. 249, 251 (1971) (*per curiam*) (habeas corpus petition that presents claims cognizable under 42 U.S.C. § 1983 should be construed to that extent as a complaint under § 1983); *with*, *Franklin v. State of Oregon*, 662 F.2d 1337, 1347-48 & n.13 (9th Cir. 1981) (courts should construe *pro se* pleadings liberally; construing § 1983 complaint as a habeas corpus petition).

Dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle her or him to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In short, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly suggest a claim entitling the plaintiff to relief. *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

**DISCUSSION**

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint argues: that Plaintiff has failed to state any plausible claims for relief; that Plaintiff's claims should be dismissed, as to the individually named defendants, on the basis of qualified immunity; that Plaintiff's request for injunctive relief is unwarranted by the circumstances; and that Plaintiff has failed to state a claim for municipal liability against Humboldt County. *Defs.' Mot.* (dkt. 21) at 16-30. In support of these arguments, and attached as an Exhibit to a Declaration, Defendants have submitted the application for a warrant as well as the associated findings and orders of Judge Hinrichs of the

6

Humboldt County Superior Court, Juvenile Division. *See Exh. A* (dkt. 23-1 *SEALED*) at 2-9.³

On August 3, 2017, Defendant Kristin Ellis, a social worker employed by Humboldt County Child Welfare Services ("CWS"), appeared before Judge Hinrichs, declaring a series of statements under penalty of perjury and petitioning for a warrant. *Id*. at 6, 8-9. Two days earlier, on August 1, 2017, CWS had received a referral regarding Plaintiff's daughter I.A. (age 1 in 2017) and Plaintiff's son B.M.K (age 4 in 2017) with another father. *Id.* at 8. The children reside in Manilla, California, with Plaintiff and I.A.'s father, Derrick Andrews. *Id.* Plaintiff and I.A.'s father practice a religion called Earth Center of Maanu, which involves certain purification rituals. *Id.* According to the referral, "[t]he baby is bathed daily by the mother, who boils water and pours the boiling water onto the baby's pressure points and artery-fed organs, including the genitals, bottom, belly button, and over the heart and kidneys." *Id.* The referral went on to relate that Plaintiff does not use conventional doctors and believes that this process is beneficial in "strengthening the child's organs." *Id*. The referral also noted that police had been dispatched to Plaintiff's residence on a number of occasions, and that I.A.'s father, Mr. Andrews, "is very hostile." *Id*.

The following day, on August 2, 2017, Defendants Schneider and Enriquez-Paredes were dispatched by CWS to Plaintiff's home in Manilla, accompanied by Humboldt County Sheriff's Office deputies. *Id*. Once there, Plaintiff and Mr. Andrews would not allow the social workers or deputies to enter the home or to see the children, at which point Defendant Schneider told Plaintiff that if the parents would not allow the social workers to see the children, that CWS would seek a warrant, and to which Mr. Andrews responded by suggesting that a better procedure would be for CWS to summon him to court. *Id*. As the social workers and deputies prepared to leave, Plaintiff

---

³ Defendants request (dkt. 22) the court to take judicial notice of these attached records of the Humboldt County Superior Court. In ruling on a Rule 12(b)(6) motion, a court's inquiry generally is limited to the allegations in the complaint. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, "'[a] court may . . . consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment.'" *Olivera v. Am. Home Mortg. Servicing, Inc.*, 689 F. Supp. 2d 1218, 1221 (N.D. Cal. 2010) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Court records constitute matters of public record, and judicial notice is proper when the parties do not dispute their authenticity. Here, Plaintiff not only does not dispute the authenticity of these court records, she frequently references them in the operative complaint as well as in her opposition to Defendants Motion to Dismiss. Accordingly, the court will take judicial notice of these records.

indicated that she was willing to speak privately with Defendant Schneider. *Id*. In the course of that conversation, Plaintiff reportedly told Defendant Schneider that the purification ritual involves boiling water with tea, placing rags into the hot water, and then wrapping the baby with the rags. *Id*. Defendant Schneider asked again to see the child, but Plaintiff refused and suggested that she might bring the child to the CWS office at some unspecified time later that day. *Id*. While this conversation was ongoing, Mr. Andrews, having scaled a fence in order to climb onto the rooftop of his residence, "continue[d] shouting from there after stating that he was going to climb a mountain to preach," yelling generally about "social worker devils," as well as about "crimes committed against his people." *Id*. At this point, and without having seen the children, the social workers and deputies left the residence, and the remainder of the day passed without Plaintiff taking her children to the CWS office to be assessed. *Id*. Later that day, two other social workers employed by CWS interviewed Robert Keating, the father of B.M.K., Plaintiff's older child. *Id*. at 9. Mr. Keating reported to CWS that he has audio recordings of conversations between Plaintiff and her mother wherein Plaintiff is heard saying that she has poured boiling water on her infant child's reproductive organs in order "to keep her from being promiscuous when she is older." *Id*. Mr. Keating also reported to CWS that when he is speaking on the phone with B.M.K, Mr. Andrews can frequently be heard yelling in the background and threatening to beat B.M.K. *Id*.

Thereafter, a case was opened in the Juvenile Division of the Humboldt County Superior Court; the case was styled, "In the matter of: I.A. and B.M.K." *Id*. at 6. A petition was filed by Defendant Kalin (acting in an official capacity as Deputy County Counsel), seeking an order permitting CWS entry into Plaintiff's home, an interview with both children, and a medical examination for I.A. *Id*. at 6, 9. Having reviewed the petition and its attached sworn declaration by Defendant Ellis (acting in an official capacity as County Child Welfare Officer), Judge Hinrichs made the following findings: (1) that there was reasonable cause to believe that the children involved come within the description of the California Welfare and Institutions Code § 300 (bringing within the jurisdiction of the juvenile court matters where it can be shown that a child has suffered, or there is a substantial risk that the child will suffer, serious physical, emotional, or other harm); (2) that the circumstances required a medical examination of I.A. by a licensed

medical practitioner with specialized training in diagnosing and treating child abuse in order to determine whether there has been any such abuse; and, (3) that entry into the Plaintiff's home by CWS or law enforcement investigators was required pursuant to California Welfare and Institutions Code § 328 such that investigators may speak with the children and such that they may inspect the safety of the home in order to determine whether further proceedings in juvenile court may be warranted. *Id*. at 6-7. Based on these findings, Judge Hinrichs issued an order authorizing CWS to obtain a suitable medical examination for I.A. in order to determine whether the child had been abused or neglected, adding that the examination shall take place within 72 hours unless the child needed protective custody, in which case it was to take place within 72 hours of the effectuation of the protective custody. *Id*. at 7. The order further authorized CWS and law enforcement to enter the children's home (Plaintiff's residence), commanding as follows: "[t]he child's parent, guardian, or caretaker shall immediately permit Child Welfare Services and/or Law Enforcement investigators to enter the child's home so they can see and speak with the child and inspect the safety of the home in order to determine whether child welfare services should be offered to the family and to determine whether juvenile court proceedings should be commenced." *Id*.

In the operative complaint, Plaintiff submits two reasons why Judge Hinrichs issued an invalid order: first, "[t]he Judge was not a neutral because her pay is dependent on the number of warrants issued"; and second, that by issuing the order in this juvenile case, Judge Hinrichs was merely retaliating against Mr. Andrews for his having complained about her following a previous case about a driver's license. *FAC* (dkt. 19) at 8. In her opposition to Defendants' motion for dismissal, Plaintiff adds four more reasons: (1) because the initial referral to CWS was reportedly based on an anonymous call; (2) because probable cause was lacking; (3) because I.A.'s name was the subject of some sort of unspecified misspelling; and, (4) because there was, in fact, no child abuse. *Pl.'s Opp*. (dkt. 40) at 3-4. The court finds none of these reasons to be persuasive.

By way of arguments or allegations in support of her claims Plaintiff does not offer much other than some legal boilerplate, an extensive discussion of a law review article, and some repetition of the conclusory statements in the operative complaint. *See generally id*. at 2-16. For

example, Plaintiff complains that her "right to exercise her religion was violated" by a misapplication of the California child abuse statutes, and that Defendants' actions have placed a burden on her ability to practice her religion, but Plaintiff does not explain or allege anything of substance beyond that. *Id*. at 6. Likewise, Plaintiff submits that Defendants retaliated against her because of her religion "by investigating an anonymous call stating [the] family's rituals practice caused child abuse without evidence of physical harm on the child," however, Plaintiff does not explain or allege how the initiation of this child welfare investigation was retaliatory at all, let alone retaliation for Plaintiff's religious preference or practice. *Id*. Additionally, because Plaintiff has not sued any sheriff's deputies in this action, her complaints to the effect that she "was seized by Sheriffs and prevented from using the phone and told to sit on the couch," bear no relevance to her assertion that "she and her children were "seized" by Defendants Schneider and Enriquez at Plaintiff's residence." *Id*. at 7. As to Defendants Schneider and Enriquez-Paredes, Plaintiff argues that she and her children were "seized" by two social workers because Plaintiff was faced with the choice of either voluntarily taking I.A. to the emergency room for the court-ordered medical examination, or facing further juvenile court proceedings where CWS would seek to take the child into protective custody for purposes of the medical examination. *Id*. This same choice – accompany CWS social workers to an emergency room for the medical exam voluntarily or face further court proceedings about protective custody – is also characterized by Plaintiff as being a due process violation and an infringement of her right as a parent to make decisions concerning her child. *Id*. at 11.

Similarly, without explaining or alleging a logical connection, Plaintiff argues that if CWS had done a more thorough investigation of the anonymous referral which she contends came from her own parents, for example by first checking the website "TheEarthCenter.org," that Defendants "would have arrived at the fact that the anonymous (plaintiff's parents) call and Plaintiff's ex-boyfriend was harassment, [intended] to ruin and humiliate the Plaintiff's religious practice and relationship." *Id*. at 14. Lastly, in concluding her opposition to Defendants' Motion, without explaining or alleging how, Plaintiff submits that she "was deprived of her property (child) without probable cause by SW Schneider and Enriquez." *Id*. at 16.

10

**Claim-1 – Freedom of Religion and Retaliation for Religious Practice**

The First Amendment of the United States Constitution protects the free exercise of religion, and government actions that substantially burden a religious practice must be justified by a compelling state interest and must be narrowly tailored to achieve that interest. *Sherbert v. Verner*, 374 U.S. 398, 402-09 (1963). In order to state a claim under § 1983, a plaintiff must establish that the government has placed a substantial burden on his or her free exercise of religion. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994). Next, a court must determine whether some compelling state interest justifies the infringement. *Longmire v. City of Oakland*, C 10-01465 JSW, 2010 WL 2629818 (N.D. Cal. June 29, 2010). Notably, parents have a First Amendment right to direct their minor children's religious upbringing. *See Wisconsin v. Yoder*, 406 U.S. 205, 231 (1972).

Here, if Plaintiff's complaint is liberally construed, her religious liberty and retaliation claim alleges that Defendants, acting under the color of state law, violated her religious freedom, burdened her religious practice, and retaliated against her because of her religion, all at once, by the act of initiating and conducting a routine child welfare investigation, leading to a court-ordered medical examination that was initiated by a referral that Plaintiff believes came from her own parents and that was baseless. The court finds that Plaintiff's bare statements to the effect that a burden was placed upon her religious practice, or that Defendants' motives were retaliatory and due to her religious preference, without alleging or explaining how, are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Therefore, while Plaintiff has already amended once, and having construed Plaintiff's pleadings liberally, and having taken all of Plaintiff's well-pleaded allegations of material fact as true and then construing them in the light most favorable to Plaintiff, nevertheless, the court is of the opinion that Plaintiff has not articulated a plausible claim as to religious liberty or retaliation. This is so because, in place of allegations of fact, Plaintiff has generally only pleaded a series of conclusory statements, or unwarranted deductions of fact, or unreasonable inferences. *See Sprewell*, 266 F.3d at 988.

Accordingly, because Plaintiff has failed to articulate and allege a plausible First Amendment claim, Claim-1 is dismissed as to all parties. Because it is not clear that this claim can

11

not be saved by an amendment, the dismissal shall be without prejudice, and Plaintiff is granted leave to amend. *See In re Daou Systems*, 411 F.3d 1006, 1013 (9th Cir. 2005) (complaint may be dismissed with prejudice if it is clear that it cannot be saved by amendment); *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) ("Dismissing a complaint without leave to amend is appropriate when granting leave would serve no purpose because the acts complained of cannot constitute a claim for relief."); *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (dismissal with prejudice is proper if amendment "would be futile in saving the plaintiff's case"). In amending, rather than relying on conclusory statements, Plaintiff must include actual facts that explain precisely what happened, and why it would constitute a violation of her religious beliefs and form the basis of a constitutional claim.

**Claim-2 – Fourth Amendment – Right to be Secure in Residence**

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. Nevertheless, because the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The right to be free of unreasonable searches is applicable in the child welfare context; in *Calabretta v. Floyd*, the Court of Appeals for the Ninth Circuit held that the warrantless, non-emergency search and seizure of an alleged victim of child sexual abuse at her home violated the Fourth Amendment. 189 F.3d 808, 818-20 (9th Cir. 1999).

Here, Plaintiff does not allege, nor was there, any warrantless entry into, or search of, her home; instead, as described above, Plaintiff has offered several conclusory statements as to why the warrant was invalid. First, as further examples of Plaintiff pleading conclusory declarations rather than allegations of fact, Plaintiff's suggestions that judges of the Humboldt County Superior Court are not neutral because they have a personal financial incentive to issue more warrants, and Plaintiff's suggestion that Judge Hinrichs issued this particular warrant out of retaliation for a prior case involving a driver's license issue for Mr. Andrews, are completely unsupported and do not merit any serious discussion. Second, to the extent that Plaintiff seeks to base her Fourth Amendment claim on the invalidity of the warrant due to a deficiency in probable cause, the court

12

will note once again, that simply declaring that a warrant lacked probable cause is not sufficient to articulate a plausible Fourth Amendment claim. The court finds that the above-described warrant and affidavit were supported by probable cause to believe that a child in Plaintiff's custody or care may be in danger.

Likewise, Plaintiff similarly declares that Defendants' failure to remove their shoes during the execution of a valid child welfare warrant constituted a Fourth Amendment violation; the court disagrees. Also, as mentioned above, to the extent that Plaintiff wishes to complain about the sheriff's deputies that reportedly instructed her to sit on her couch or reportedly grabbed her phone, the court notes again that Plaintiff has not named any law enforcement officers in this action. As to Plaintiff's conclusion that her Fourth Amendment rights were violated by Defendants, Plaintiff has alleged nothing more than the fact that she did not like being faced with the choice of either voluntarily taking I.A. for a medical examination or being made to endure further proceedings in juvenile court such as to effectuate the order for an examination. Plaintiff found the choice to be coercive – however, such is the nature of court orders, compliance is not optional. As to Plaintiff's contention that I.A.'s name may have been misspelled in Judge Hinrichs's order and warrant, Plaintiff obfuscates and cryptically states that there was no such person there and therefore the warrant lacked specificity. Again, the court finds that Plaintiff has pleaded a series of conclusions rather than allegations of fact that might support a plausible Fourth Amendment claim as to the requisite specificity of a warrant. Accordingly, because Plaintiff has failed to articulate and allege a plausible Fourth Amendment claim, Claim-2 is dismissed as to all Defendants. However, as with Claim-1, the court is not convinced that Plaintiff's Fourth Amendment search and seizure claims could not be saved by amendment. Accordingly, this claim is dismissed with leave to amend. In amending, Plaintiff is again reminded that she must include actual facts that explain what happened.

**Claim-3 – Fifth and Fourteenth Amendment – Due Process Claim**

Plaintiff's due process claim is intertwined with and dependent upon her already-rejected assertion that the warrant was invalid because the affidavit failed to establish probable cause. Plaintiff contends that her property and liberty interests in remaining in her residential property

13

were deprived when Defendants executed Judge Hinrichs's order because the warrant was erroneously issued. However, given that the court has already concluded that Plaintiff has not articulated a plausible claim to the effect that the warrant was erroneously issued or that it was unsupported by probable cause, the court consequently finds that Plaintiff has likewise not articulated a plausible claim that the above-described effectuation of this warrant constituted any sort of actionable deprivation of Plaintiff's liberty or property interests.

In connection with her arguments in this regard, Plaintiff contends that Defendants' apparently tardy execution of the warrant (1 day beyond the 72-hour period set forth in Judge Hinrich's order) means that the warrant had already expired and that it was no longer valid. However, the court finds Plaintiff's argument to be unpersuasive because Plaintiff has not shown that the passage of one extra day changed the probable cause equation in any way, or that Plaintiff suffered any prejudice as a result of the 1-day delay. *See e.g., Florea v. Clark Cnty.*, No. 92-37022, 1993 U.S. App. LEXIS 25696, at *3-4 (9th Cir. 1993) (despite the fact that the warrant was executed 3 hours after it expired the court's analysis turned on the fact that nothing had been shown to indicate that probable cause didn't still exist and that the Plaintiff had not demonstrated prejudice stemming from the delay); *see also United States v. Nepstead*, 424 F.2d 269, 271 (9th Cir. 1970) ("In the case before us, nothing, other than the passage of time, occurred during the six-day period between issuance and execution of the search warrant which changed the facts upon which the original affidavit was based and which gave the agents probable cause to believe that articles subject to seizure were in the house. And, on the facts before us, the passage of time could not detract from probable cause because the house was kept under surveillance for signs of activity."). Accordingly, because Plaintiff has failed to articulate and allege a plausible due process claim, Claim-3 is dismissed as to all Defendants. Similarly, it is not clear to the court that this claim is beyond the possibility of being saved by an amendment; accordingly, this claim is also dismissed with leave to amend. As mentioned, in amending, Plaintiff must include actual facts that explain what happened, rather than conclusory statements.

**Defendant Humboldt County**

Having already dismissed each of Plaintiff's claims as to all Defendants, but with leave to

14

amend, the court will also remind Plaintiff that if she wishes to allege a case of municipal liability against Humboldt County as a defendant, the following should be noted. Local government entities are considered "persons" for the purposes of being subject to liability under § 1983 where an official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40*, 130 F.3d 432, 438 (9th Cir. 1997); *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). It is not enough to allege simply that a policy, custom, or practice exists that caused the constitutional violations. *AE ex rel. Hernandez*, 666 F.3d at 636-37. Instead, the plaintiff must allege sufficient facts regarding the specific nature of the policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that plaintiff is entitled to relief. *See id*. at 637.

## CONCLUSION

Because the court is dismissing all of Plaintiff's causes of action for their failure to state any plausible claims for relief, the court does not find it necessary to address Defendants' alternative grounds for dismissal on grounds of qualified immunity, or the argument that Plaintiff has failed to state a claim for municipal liability against Humboldt County. For the reasons stated above, Defendants' Motion to Dismiss (dkt. 21) is **GRANTED** and Plaintiff's First Amended Complaint (dkt. 19) is **DISMISSED** without prejudice. Plaintiff is hereby **ORDERED** to file an amended pleading no later than 30 days from the date of this order. The failure to file an amended complaint will result in a dismissal with prejudice.

\\

**IT IS SO ORDERED.**

Dated: May 31, 2019

_____
ROBERT M. ILLMAN
United States Magistrate Judge