1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

CARRIE ANN CAPOLUPO,

Plaintiff,

v.

KRISTEN EILLS, et al.,

Defendants.

Case No. 18-cv-07458-RMI

**ORDER ON MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Re: Dkt. No. 51

Now pending before the court is Defendants' Motion (dkt. 51) seeking dismissal of Plaintiff's Second Amended Complaint ("SAC") (dkt. 49) without further leave to amend. Plaintiff has responded (dkt. 54), and Defendants have replied (dkt. 55). For the reasons stated below, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

Proceeding *pro se*, Plaintiff, Carrie Capolupo, filed an original complaint against two social workers, an attorney for Humboldt County, and Humboldt County Child Protective Services, for violating her rights to privacy and to the free exercise of her religion. Compl. (dkt. 1). In lieu of an Answer, Defendants moved to dismiss (dkt. 13), which was followed by Plaintiff's First Amended Complaint, naming the same two social workers and county counsel, but replacing Humboldt County Child Protective Services with Humboldt County in the caption. First Amend. Compl. ("FAC") (dkt. 19) at 1. Defendants then moved to dismiss the FAC (dkt. 21), which the court granted without prejudice, allowing Plaintiff an opportunity to cure the lack of adequate factual allegations to support the claims in the FAC by way of another amendment (dkt. 48). The court identified four issues for Plaintiff to cure with another amended complaint. First, regarding

Plaintiff's claim of interference with her religious freedom and retaliation for her religious practice, the court dismissed this claim with leave to amend such that Plaintiff could cure the insufficiency of alleging nothing more than a disagreement with a court-ordered medical examination of Plaintiff's minor child as part of a routine child welfare investigation based on what Plaintiff believes was a baseless referral from Plaintiff's own parents. *See* Order Dismissing FAC (dkt. 48) at 11-12 ("In amending, rather than relying on conclusory statements, Plaintiff must include actual facts that explain precisely what happened, and why it would constitute a violation of her religious beliefs and form the basis of a constitutional claim."). Second, Plaintiff's FAC presented a Fourth Amendment claim, and the court found all but one of its supporting allegations were incapable of supporting any cognizable Fourth Amendment claim; however, the court did note that "to the extent that Plaintiff wishes to complain about the sheriff's deputies [who accompanied the social workers and] reportedly instructed her to sit on her couch and reportedly grabbed her phone, the court notes again that Plaintiff has not named any law enforcement officers in this action." *Id*. at 12-13. Third, the FAC presented a Due Process claim, challenging the issuance and execution of the court order requiring a medical examination of Plaintiff's child, specifically, that there was a 1-day delay in the execution of the order beyond its 72-hour limit; the court found that Plaintiff had not alleged any prejudice stemming from the delay, and accordingly Plaintiff was granted leave to amend this claim as well. *Id*. at 13-14. Lastly, because Plaintiff named Humboldt County as a Defendant in the FAC but had not alleged sufficient facts to state a claim of municipal liability, the court described the standards governing claims against municipalities and granted leave to amend this claim in order to provide sufficient allegations of fact in line with those standards. *Id*. at 14-15.

*Plaintiff's Claims*:

Thereafter, Plaintiff filed a Second Amended Complaint ("SAC") (dkt. 49) which is the subject of the pending motion to dismiss. The SAC consists of an introduction, a section about jurisdiction, a lengthy preamble entitled, "Claim Against Public Entity County of Humboldt, Humboldt County Department of Health Human Services / Social Services" (*id*. at 2-19), followed by eleven numbered claims for relief (*id*. at 19-27), a request for an injunction, compensatory and

punitive damages, as well as attorneys' fees and costs (*id*. at 27-28). In the preamble, Plaintiff

mentions two previously unnamed persons, Connie Beck and Yvonne Winter, Humboldt County's

Social Services Director and Social Services Supervisor, respectively. *Id*. at 4. Plaintiff

denominates them as "defendants," but she does not allege any specific facts pertaining to them

nor did she name them in any of the eleven numbered claims. *Id*.

Plaintiff's first five claims each expressly name the following defendants – Humboldt

County itself, an unspecified number of unidentified Sheriff's Deputies, as well as individual

Defendants Deputy County Counsel Rory Kalin and social workers Kristen Ellis, Kimberly

Schneider, and Juan Carlos Enriquez-Paredes. *See id*. at 19-22. In Claim-1, Plaintiff contends that,

through instituting and conducting child welfare proceedings, Defendants collectively deprived

Plaintiff of her right to freely express her religious beliefs and denied her right to privacy by

subjecting her to threats, using excessive force, and maliciously prosecuting her to deter her from

practicing her religion. *Id*. at 19. In Claim-2, Plaintiff submits that Defendants violated her right to

be free from unreasonable searches and seizures. *Id*. at 20. Claim-3 alleges that Defendants

subjected Plaintiff to excessive force. *Id*. at 21. In Claim-4, Plaintiff argues that the institution of

the child welfare proceedings "constituted malicious prosecution in that there was no basis for the

Plaintiffs' (sic) seizure, yet Defendants continued with the prosecutions, which were resolved in

Plaintiffs' (sic) favor." *Id*. at 21-22. In Claim-5, Plaintiff submits that Defendants subjected her to

a "deprivation of liberty without due process of law." *Id*. at 22.

In Claim-6, alleging municipal liability, Plaintiff contends that Defendant Humboldt

County, acting through its Department of Health and Human Services, "developed, implemented,

enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting

deliberate indifference [to] the Plaintiffs' (sic) constitutional rights which cause[d] the violation of

such rights." *Id*. at 23. Specifically, Plaintiff argues that these actions were willfully done with the

specific intent to deprive Plaintiff of her rights under the First, Fourth, Fifth, and Fourteenth

Amendments to the Constitution. *Id*. at 23-24. In Claim-7, Plaintiff submits that Defendants

violated Article I, Section-4, of the California Constitution by "discriminating against Plaintiff[']s

religious customs and in initiating [child welfare] proceeding[s] [that] were racially motivated and

3

done without lawful justification or jurisdiction, and were designed to and did cause specific and serious psychological [damage] and suffering . . . ." *Id.* at 24-25. In Claim-8, Plaintiff argues that Defendants violated Article I, Section-13, of the California Constitution by subjecting Plaintiff "to unlawful search and seizure, [such that she was] coerced or forced out of her residence [which was] done without reasonable suspicion or probable cause . . . ." *Id.* at 25. In Claim-9, a malicious prosecution claim under the common law of California, Plaintiff submits that Defendants "maliciously commenced [j]uvenile proceedings against Plaintiff[']s children . . . falsely and without probable cause . . . [that] were terminated/dismissed/unfound (sic) in Plaintiff[']s favor." *Id.* at 25-26. In Claim-10, brought under the California Unruh Civil Rights Act, Plaintiff contends that "[b]y conducting the complained of search in the manner described herein, [D]efendants interfered with [P]laintiff's federal and state constitutional and statutory rights by means of threats, intimidation, and/or coercion . . . ." *Id.* at 26-27. Lastly, in Claim-11, Plaintiff submits that "[b]y conducting the complained of search in the manner described," Defendants Schneider, Enriquez-Paredes, the unidentified Sheriff's Deputies, and the County of Humboldt, violated § 4030 of the California Penal Code. *Id.* at 27.

*Plaintiff's Factual Allegations:*

By way of facts, the SAC contains largely the same set of factual allegations that were pleaded in the FAC. The SAC alleges that the petition for an investigatory medical examination of Plaintiff's child was taken before a judge without prior notice to Plaintiff. SAC at 8. While the SAC offers more by way of argument and less by way of a description of those court proceedings, Plaintiff's Response to Defendants' Motion to Dismiss relies upon and makes repeated references to the records of those proceedings (*see* Pl.'s Opp. (dkt. 54) at 8, 9, 17-18, 21), which have been filed in this court, and of which this court has already taken judicial notice. *See* Order (dkt. 48) at 7 n.3. Those court records constitute the application for a warrant as well as the associated findings and orders of Judge Hinrichs of the Humboldt County Superior Court, Juvenile Division. *See* Defs.' Mot., Exh. A (dkt. 23-1 *SEALED*) at 2-9. The facts contained within the SAC as well as the records of the child welfare proceedings are as follows.

On August 1, 2017, child welfare officials received a referral about Plaintiff's daughter

4

I.A. (age 1 in 2017)[1] and Plaintiff's son B.M.K (age 4 in 2017) with another father. *Id.* at 8. During the time period in question, the children resided in Manilla, California, with Plaintiff and R.R.'s father, Derrick Andrews. *Id.* Plaintiff and Mr. Andrews were reported to practice a religion that involves certain purification rituals. *Id.* According to the referral, "[t]he baby is bathed daily by the mother, who boils water and pours the boiling water onto the baby's pressure points and artery-fed organs, including the genitals, bottom, belly button, and over the heart and kidneys." *Id.* The referral added that Plaintiff believes that this process "strengthen[ed] the child's organs." *Id.*

The following day, Child Welfare Services ("CWS") dispatched social-worker Defendants Schneider and Enriquez-Paredes to Plaintiff's home in Manilla, accompanied by a number of Humboldt County Sheriff's Office deputies. *Id.* Once there, Plaintiff and Mr. Andrews would not allow the social workers or deputies to enter the home or to see the children; at which point Defendant Schneider told Plaintiff that if the parents would not allow the social workers to see the children, a warrant would be sought. *Id.* At this point, Plaintiff was reported to have told Defendant Schneider that the purification ritual in question involves boiling water with tea, placing rags into the hot tea, and then wrapping her infant daughter with those rags. *Id.* Plaintiff also alleges that she "chose to explain the customs of aborigines" to the social worker Defendants. *See* SAC at 7-8. During this conversation, Mr. Andrews was reported to have scaled a fence, climbed onto the rooftop of his residence, shouted "that he was going to climb a mountain to preach," bemoaned his displeasure with the "social worker devils," and complained more generally about "crimes committed against his people." *Id.* This apparently caused the social workers and deputies to leave the residence. *Id.* Later that day, two other social workers employed by CWS conducted an interview with Robert Keating, the father of Plaintiff's son B.M.K. *Id.* at 9. Mr. Keating reported to CWS that he possessed audio recordings of conversations between Plaintiff and Plaintiff's mother wherein Plaintiff is heard saying that she has poured boiling water on her infant daughter's reproductive organs in order "to keep her from being promiscuous when

---

[1] As an attachment to the SAC, Plaintiff has filed what appears to be a birth certificate for her infant daughter, I.A., who was born in early July of 2016. The document, dated in September of 2016, reflects that I.A.'s given name (or changed name) is R.R. *See* Exh. A to SAC (dkt. 49-1). Hereafter, the court will refer to Plaintiff's daughter as R.R., while continuing to refer to her son as B.M.K.

she is older." *Id*. Mr. Keating also reported to CWS that, while speaking on the phone with his son, he frequently heard Mr. Andrews yelling in the background and threatening to beat B.M.K. *Id*.

On August 3, 2017, social worker Defendant Kristin Ellis appeared before Judge Hinrichs to petition for a warrant. *Id*. at 6, 8-9. Consequently, a case was opened in the Juvenile Division of the Humboldt County Superior Court, styled, *In the matter of: I.A. and B.M.K. Id*. at 6. The petition was filed by Defendant Kalin (acting in an official capacity as Deputy County Counsel), seeking an order permitting entry into Plaintiff's home, an interview with both of Plaintiff's children, and a medical examination for Plaintiff's infant daughter. *Id*. at 6, 9. Judge Hinrichs found that: (1) that there was reasonable cause to believe that the children involved come within the description of the California Welfare and Institutions Code § 300 (bringing within the jurisdiction of the juvenile court those matters where it can be shown that a child has suffered, or there is a substantial risk that the child will suffer, serious physical, emotional, or other harm); (2) that the circumstances require a medical examination of Plaintiff's daughter by a licensed medical practitioner with specialized training in diagnosing and treating child abuse in order to determine whether there has been any such abuse; and (3) that entry into the Plaintiff's home by CWS and or law enforcement investigators was required pursuant to California Welfare and Institutions Code § 328 for investigators to speak with the children and to inspect the safety of the home in order to determine whether further proceedings in juvenile court may be warranted. *Id*. at 6-7. Based on these findings, Judge Hinrichs issued an order authorizing CWS to obtain a suitable medical examination for Plaintiff's daughter in order to determine whether the child had been abused or neglected, adding that the examination shall take place within 72 hours unless the child were to need protective custody, in which case it was to take place with 72 hours of the effectuation of the protective custody. *Id*. at 7. Judge Hinrichs's order further provided that "[t]he child's parent, guardian, or caretaker shall immediately permit Child Welfare Services and/or Law Enforcement investigators to enter the child's home so they can see and speak with the child and inspect the safety of the home in order to determine whether child welfare services should be offered to the family and to determine whether juvenile court proceedings should be commenced." *Id*.

In any event, the SAC goes on to contend that, because Plaintiff's daughter is named R.R. rather than I.A., Defendants' "intrusive behavior" violated Plaintiff's right to privacy, which once asserted, caused Defendants to retaliate. *See* SAC (dkt. 49) at 8. Plaintiff then goes on to enumerate a list of reasons as to why, in Plaintiff's view, Judge Hinrichs's order was invalid. *See id*. at 8-9. First, Plaintiff argues that order was invalid because it identified Plaintiff's daughter as I.A. rather than R.R. *Id*. at 8. Second, Plaintiff submits that, before the case was taken to Judge Hinrich, Plaintiff told Defendants Schneider and Enriquez-Paredes the following: that her children have conventional doctors; that Mr. Andrews is not hostile; that the source or sources of the original referral harbored racial animosity towards Plaintiff or Mr. Andrews; and, that Plaintiff and Mr. Andrews "are members/initiate of a federal[ly] recognized international non-profit organization called The Earth Center of Mannu (sic), inc, who[se] mission is to inspire, research and support education into the original ancestor culture of humanity for the health [and] well-being of all people." *Id*. at 8-9. Plaintiff also alleges that she told the social-worker Defendants on August 2, 2017 that the customs of this organization do not injure or damage her infant daughter in any way, that "the customs of the Healing Baths [] stop when the child begins to walk," and that her daughter had been walking since April of 2017. *Id*. at 9. In addition to arguing that these alleged statements rendered Judge Hinrichs's order invalid, Plaintiff also contends that, based on her refusal to permit the social workers to see her infant daughter on August 2, 2017, the social workers and deputies "retaliated by returning to [] [her] residence on August 7, 2017 with an investigative warrant due to [] [Plaintiff] establishing her right to privacy . . . on August 2, 2017." *Id*. at 9.

The SAC then alleges that when the above-mentioned Defendants visited Plaintiff on August 7, 2019, to effectuate Judge Hinrichs's order for a medical examination, insisting that Plaintiff and her children accompany them to the emergency room, that "[P]laintiff was coerced into going to the emergency room by being prevented from engaging in her religious customs such as Healing showers followed by chants," as well as from breast-feeding her daughter. *Id*. at 10. The SAC goes on to allege that upon examination of Plaintiff's children, medical staff at the emergency room were unable to identify any signs of abuse or neglect. *Id*. at 22.

With one exception, the remainder of the contents of the SAC constitute either argument or conclusory statements rather than allegations of fact. For example, the SAC complains that the original referrals that triggered the child welfare investigation and proceedings were rooted in "harassment and discriminatory allegations by Plaintiff's ex-boyfriend and parents who believe themselves to be White Christians." *Id*. at 9. Likewise, the SAC argues, at length, that the provisions of California law that govern child welfare proceedings were unconstitutional as applied to her but without any comprehensible explanation as to why or how. *Id*. at 11-14. Other portions of the SAC are both repetitive and difficult to understand, such as Plaintiff's contention to the following effect: "The investigative warrant was invalid. The investigative as applied gave Leverage/discretion" to social-worker Defendants Schneider and Enriquez-Paredes "to subject plaintiff to threats, duress, and coercion to have a medical exam since probable cause for the removal was absent." *Id*. at 14. First, Plaintiff has not alleged that her child was ever "removed" from her custody; second, since Judge Hinrichs had ordered the medical examination of Plaintiff's daughter, it appears that Plaintiff is once again imputing the coercive nature of a court order onto the child welfare officers tasked with effectuating that order. *See* Order Dismissing FAC (dkt. 48) at 13 ("Plaintiff found the choice [between complying with Judge Hinrichs's order or facing further proceedings] to be coercive – however, such is the nature of court orders, compliance is not optional."). Otherwise, the SAC presents a great many conclusory statements, such as the statement that Defendants acted "for purposes not related to the health, safety, and welfare" of her children, but with "malicious intent, gross recklessness, and deliberate indifference to [Plaintiff's] familial rights." *Id*. at 6.

However, the court will note that while shy on details, Plaintiff has also alleged that during the execution of Judge Hinrichs's order deputies "seized" Plaintiff and forced her to sit on a couch in her residence. *Id*. at 10. Plaintiff had included slightly greater detail in the First Amended Complaint, alleging that during the execution of Judge Hinrichs's order, in addition to being "commanded to sit on the couch . . . one sheriff grabbed her phone out of her hand and said Plaintiff could not use her phone." *See* FAC (dkt. 19) at 12. The omission of the alleged seizure of Plaintiff's phone aside, the Second Amended Complaint goes no further by way of factual

allegation in this regard than to simply say that Plaintiff was seized by one or more deputies and forced to sit on a couch for an unspecified amount of time while social workers spoke with her children in another room. *See generally* SAC (dkt. 49) at 1-28. Additionally, it also appears that Plaintiff may be alleging that she considered herself to have been seized at the emergency room as well due to someone reportedly asking her not to leave while her child was being examined. *Id*. at 11-12.

By way of relief, Plaintiff seeks a declaration that Defendants' conduct violated her rights under the provisions enumerated in her eleven claims. *Id*. at 27. An injunction requiring "that Defendants DHHS possessing any information arising from the actions complained of herein shall collect and deliver to the Plaintiff[] all such records and expunge or delete all such information from their records." *Id*. at 28. Plaintiff also seeks an injunction prohibiting Defendants from interfering in Plaintiff's constitutionally protected activities, especially when it involves "reports from Plaintiff[']s [p]arents or relatives and ex boyfriends from again [causing] similar discriminatory harassment." *Id*. Additionally, Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs of suit, as well as any other relief the court may deem appropriate. *Id*.

## STANDARD OF REVIEW

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws," that were perpetrated by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983; *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978). In the present context, in order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); thus, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party," *Wyler Summit Partnership v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998), the court is not required to accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, mere recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Further, because Plaintiff is unrepresented, this court will construe her pleadings and arguments liberally, interpreting them to raise the strongest arguments they suggest. *See Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("[c]ourts have a duty to construe *pro se* pleadings liberally, including *pro se* motions"); *cf. Wilwording v. Swenson*, 404 U.S. 249, 251 (1971) (*per curiam*) (habeas corpus petition that presents claims cognizable under 42 U.S.C. § 1983 should be construed to that extent as a complaint under § 1983); *with*, *Franklin v. State of Oregon*, 662 F.2d 1337, 1347-48 & n.13 (9th Cir. 1981) (courts should construe *pro se* pleadings liberally; construing § 1983 complaint as a habeas corpus petition).

Dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of pleaded facts that would entitle her or him to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In short, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly suggest a claim entitling the plaintiff to relief. *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

## DISCUSSION

To put it briefly, Defendants' pending Motion to Dismiss the SAC argues: that Plaintiff has failed to allege any new facts that could support any of her previously presented claims under § 1983; that Plaintiff's new claim for malicious prosecution should be dismissed because she does not allege that any charges were brought against her; that the municipal liability claim against Humboldt County should be dismissed because it is once again "based on boilerplate allegations and, otherwise, there is no underlying constitutional violation;" that Plaintiff's new state law claims should be dismissed because the claims are not properly presented and untimely; and, lastly, that Plaintiff failed to bring the required motion to add official-capacity Defendants Connie Beck and Yvonne Winter, while also failing to plead any facts to support liability on their part. *See*

10

Defs.' Mot. (dkt. 51) at 12.

### ***Improperly Named Parties***

In dismissing Plaintiff's previously operative complaint, the court granted Plaintiff leave to amend, *such as to add factual allegations*, in support of the already-pleaded claims against the already-named Defendants. *See* Order (dkt. 48) at 11-15. However, rather than adding factual allegations, the SAC has mostly advanced argument, a few new claims (also lacking in factual support), and two improperly added "parties" who are untethered from any relevant factual allegations. *See generally* SAC (dkt. 49).

Plaintiff's Original Complaint (dkt. 1) named social-worker Defendants Ellis and Schneider, as well as Deputy County Counsel Rory Kalin, and Humboldt County itself. Compl. (dkt. 1) at 1-2. In lieu of an answer, Defendants filed a motion to dismiss. Defs.' Mot. (dkt. 8). Rather than respond to the motion, Plaintiff amended her pleading as a matter of course. FAC (dkt. 19). While continuing to name Defendants Ellis, Schneider, Kalin, and Humboldt County, the FAC added a new social worker Defendant – Juan Carlos Enriquez-Paredes. *Id*. at 1-2. Construed liberally, both the Original Complaint and the FAC, also complained about one or more unidentified deputies from the Sheriff's Office. Once again, Defendants moved to dismiss the FAC. Defs.' Mot. (dkt. 21). Granting Defendants' motion, the court then dismissed the four claims presented in the FAC due to Plaintiff's failure to allege sufficient facts in support of any of the claims. *See* Order Dismissing FAC (dkt. 48) at 11 (finding that in place of allegations of fact, Plaintiff has generally only pleaded a series of conclusory statements, or unwarranted deductions of fact, or unreasonable inferences.). Thereafter, Plaintiff filed the SAC (dkt. 49), which now advanced eleven claims, rather than four, against the same list of defendants, but while purporting to also add Connie Beck, the Social Services Director of the Humboldt County Department of Health and Human Services ("DHHS"), as well as Yvonne Winter, a Social Services Supervisor at DHHS. *See* SAC (dkt. 49) at 4. While the SAC mentions Ms. Winter and Ms. Beck in the preamble, they are not expressly named in Plaintiff's eleven claims as are the other Defendants. *See id*. at 4, 17, 19-27. Furthermore, while Plaintiff alleges that Ms. Beck and Ms. Winter occupy supervisory positions at DHHS, Plaintiff makes no other allegation specifically touching on any

act or omission for which either might be responsible. *See generally id*.

A party may amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). However, in all other cases, amendment can only be had with the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). While this court granted Plaintiff leave to file an amended pleading following the dismissal of the FAC, the scope of that leave to amend was limited to adding factual allegations in support of the already-pleaded claims against the already-named Defendants. Plaintiff neither sought leave of court nor Defendants' written consent to add new claims or to add new parties. Since Plaintiff is proceeding *pro se*, the court will construe the inclusion of new claims and parties in the SAC as a motion for leave to do the same. Because Defendants have addressed Plaintiff's seven newly added claims in the currently pending motion to dismiss, the court will consider the claims in light of the motion.

Plaintiff's attempt to add Ms. Beck and Ms. Winter is, however, another matter. Because their inclusion is not attended with any supporting factual allegations as to any specific action or omission connecting them to any of Plaintiff's claims, such that the court could construe those allegations as a motion for leave to add them as parties; also because they are only named in the preamble of the SAC but not in the claims; and because Defendants have objected (*see* Defs.' Mot. (dkt. 51) at 28-29) – the court finds that Plaintiff has improperly attempted to add Ms. Beck and Ms. Winter as parties. Accordingly, it is herewith **ORDERED** that Ms. Yvonne Winter and Ms. Connie Beck are **DROPPED** from this action. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

### *Causes of Action*

The court will note that while the SAC ventures to delineate 11 separate causes of action, Plaintiff frequently mixes subject matter between and across these claims. For example, Plaintiff mentions excessive force and malicious prosecution in the middle of describing her free exercise of religion claim even though those constitute independently pleaded claims found elsewhere in the operative complaint. *See* SAC (dkt. 49) at 19-27. Indeed, ferreting out and parsing Plaintiff's allegations has been unduly tedious due to the scattered and repetitive presentation of the SAC;

1 nevertheless, the court will address Defendants' motion for dismissal of Plaintiff's causes of

2 action in the order in which the claims appear in the SAC.

3 ***Claim-1 – Religious Liberty, Retaliation, and Family Privacy:***

4      In Claim-1, invoking § 1983, as well as the First and Fourteenth Amendments, Plaintiff

5 contends that through the above-described child welfare proceedings, Defendants collectively

6 deprived Plaintiff of her right to freely express her religious beliefs while also denying her right to

7 privacy by subjecting her to threats, using excessive force, and maliciously prosecuting her to

8 deter her from practicing her religion. SAC (dkt. 49) at 19. First, the court will note that any

9 allegation of excessive force will be dealt with below in its appropriate context – Plaintiff feels so

10 strongly about her allegations of Fourth Amendment seizure and excessive force that she has

11 peppered them throughout all of her claims. Second, the court will note that the only new factual

12 allegation added by Plaintiff in the SAC is that she was planning on engaging in a "healing

13 shower," followed by some chanting, at the time that social workers and deputies showed up to

14 enforce Judge Hinrichs's order for a medical exam. Otherwise, Plaintiff also contends that,

15 notwithstanding the child welfare referral (which she alleges came from her own mother and her

16 ex-boyfriend), Defendants were constitutionally prohibited from instituting and conducting routine

17 child welfare proceedings in a California court based on a referral that claimed Plaintiff poured

18 boiling water on her infant daughter because of the suggestion that Plaintiff allegedly told one of

19 the social workers involved that she merely wrapped her daughter in rags soaked in hot tea as part

20 of a custom or practice connected to her religion.

21      As to Plaintiff's mentioning of her right to privacy in the context of her First Amendment

22 claim, the Supreme Court has stated that there is no "general right to privacy" in the United States

23 Constitution, but that this area is "left largely to the law of the individual [s]tates." *Katz v. United*

24 *States*, 389 U.S. 347, 351 (1967). Nevertheless, the Supreme Court has developed a privacy

25 jurisprudence consisting of two "zones" of constitutional privacy: (1) "individual interest in

26 avoiding disclosure of personal matters," and (2) "the interest in independence in making certain

27 kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). The latter has

28 "dominated the Supreme Court's privacy cases." *Adams v. Drew*, 906 F. Supp. 1050, 1054 (E.D.

Va. 1995). In the present context, the court construes Plaintiff's mention of "privacy" in connection with her religious exercise and retaliation claims as suggesting that her right to family association and family privacy was intruded upon. *See e.g., Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 861 (1977) ("The Court surmises that foster families who share these attachments might enjoy the same constitutional interest in "family privacy" as natural families."). This right to familial association and privacy includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state. *See Parham v. J.R.*, 442 U.S. 584, 602 (1979); *see also Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999) (holding that "the government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents."). Thus, the state has dual and sometimes competing interests in both protecting children from abuse while preserving the privacy and dignity of the home. Accordingly, it is well established that officials may go so far as to remove a child from the custody of the parent, even without prior judicial authorization, if the information they possess at the time of the seizure is such that gives reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of such an intrusion is reasonably necessary to avert that specific injury. *See Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 1999); *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016); *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001); *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997); *see also Doe v. Lebbos*, 348 F.3d 820, 827 (9th Cir. 2003) ("[C]ase qualified as an "emergency" situation. Under our precedent, Herrera therefore did not violate the Does' constitutional right to family privacy, George's right to family association, or Lacey's Fourth Amendment rights by detaining Lacey until the November 5 hearing.").

Regarding the substance of Plaintiff's claim under the First Amendment, the provision protects the free exercise of religion, and government actions that substantially burden a religious practice must be justified by a compelling state interest and must be narrowly tailored to achieve that interest. *Sherbert v. Verner*, 374 U.S. 398, 402-09 (1963). In order to state a claim under §

14

1983, a plaintiff must establish that the government has placed a substantial burden on his or her free exercise of religion. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994). Next, a court must determine whether some compelling state interest justifies the infringement. *See Longmire v. City of Oakland*, C 10-01465 JSW, 2010 WL 2629818 (N.D. Cal. June 29, 2010). Notably, parents have a First Amendment right to direct their minor children's religious upbringing. *See Wisconsin v. Yoder*, 406 U.S. 205, 231 (1972); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 16 (2004) (citing *Newdow v. United States Cong.*, 313 F.3d 500, 504 (9th Cir. 2002)).

Turning to the retaliation component of Claim-1, generally speaking, the elements of a *prima facie* retaliation claim are satisfied by, (1) engaging in a protected activity, (2) suffering an adverse government action, and (3) showing a causal link between the protected activity and the adverse government action. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)). Thus, "[g]overnment retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *see also Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994). Put another way, "a plaintiff must prove that but for the retaliatory motive, the incidents to which he [or she] refers . . . would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (Plaintiff "must allege specific facts showing retaliation.").

Here, the court finds that Plaintiff's bare statements to the effect that a burden was placed upon her religious practice, or that Defendants' motives were retaliatory and due to her religious preference, without alleging or explaining how, are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Therefore, while the court has already granted Plaintiff leave to amend

1  once, and having construed Plaintiff's pleadings liberally, and having taken all of Plaintiff's well-

2  pleaded allegations of material fact as true and then construing them in the light most favorable to

3  Plaintiff, nevertheless, the court is of the opinion that Plaintiff has not articulated a plausible claim

4  as to any constitutionally cognizable infringement of her rights to religious liberty, family

5  association, family privacy, or any facts related to retaliation. This is so because, in place of

6  allegations of fact, Plaintiff has generally only pleaded a series of conclusory statements, or

7  unwarranted deductions of fact, or unreasonable inferences. *See Sprewell*, 266 F.3d at 988.

8  Factually speaking, the story narrated by the SAC is insufficient to make out a claim for

9  any First Amendment violations. With regards to this claim, Plaintiff alleges the following

10  assertions of fact: that her mother and ex-boyfriend told child welfare officials that Plaintiff pours

11  boiling water on her infant daughter; that child welfare officials visited Plaintiff and asked to see

12  her children; that Plaintiff refused and told one social worker that she does not pour boiling water

13  onto the child, but rather soaks rags in hot tea and wraps the child with those rags, and that

14  Plaintiff had already stopped that practice some months earlier; that Defendants thereafter initiated

15  child welfare proceedings and secured an order from a judge for entry and inspection of Plaintiff's

16  home and for a medical examination of Plaintiff's daughter; and finally, that instead of taking a

17  "healing shower" and chanting, Plaintiff reluctantly accompanied social workers to the hospital

18  where the court-ordered examination was conducted and reflected no signs of abuse. This is the

19  entirety of the factual allegations in the SAC that might be relevant to Plaintiff's contentions that

20  Defendants have interfered with the free exercise of her religion, as well as intruding upon and

21  invading her family privacy, and then retaliating against her refusal to voluntarily permit social

22  workers to see her children by instituting child welfare proceedings.

23  Plaintiff has not alleged any set of facts approaching what would be necessary to state a

24  claim to the effect that there has been any impermissible intrusion into her family privacy interest

25  in maintaining independence in making important decisions concerning herself and her child, or of

26  her right to familial association, or of the privacy and dignity of her home. Plaintiff essentially

27  alleges that child welfare officials received what could only appear as credible reports from

28  persons close to Plaintiff (her mother and ex-boyfriend) that Plaintiff's daughter was in imminent

16

danger of being injured or killed due to boiling water being poured onto her. Plaintiff alleges that she told Defendant Schneider that it was not boiling water that she poured onto her daughter, but rather that she wrapped her daughter in rags soaked in hot tea. Then, when Plaintiff refused to allow social workers to see her children, they secured a court order for a medical examination. Plaintiff then alleges that she reluctantly complied with that order, but that at the time she was approached with Judge Hinrichs's order, she was planning to take a "healing shower," followed by chanting. Plaintiff has not alleged that the "healing shower" or the chanting had to take place at a certain time, in a certain place, or with a certain frequency, such as to render that particular trip to the hospital for a court-ordered medical examination of her child a burden, let alone a substantial burden, on her religious freedom. Likewise, there was no impermissible intrusion into her family privacy. First, any intrusion (if at all) was minimal. Plaintiff's first encounter with the social workers was a consensual visit and a simple conversation. The intrusion into Plaintiff's family privacy was essentially the fact that Plaintiff had to endure a trip to the hospital for a court-ordered medical exam of her child based on alarming reports from Plaintiff's own mother and ex-boyfriend, as well as a less troubling report from herself that she wrapped her infant daughter in rags soaked in hot tea. The substance of Plaintiff's allegations here only manage to give rise to reasonable cause to believe that Plaintiff's child was potentially in imminent physical danger; and thus, that the scope of any intrusion into Plaintiff's private familial affairs was reasonably necessary to avert that specific potential injury. *See Wallis*, 202 F.3d at 1138; *Kirkpatrick*, 843 F.3d at 789; *Mabe*, 237 F.3d at 1107; *Ram*, 118 F.3d at 1310; *Lebbos*, 348 F.3d at 827.

By the same token, Plaintiff has failed to allege facts that could constitute a *prima facie* case of retaliation. All Plaintiff alleges in this regard is that, because she refused to allow social workers to see her children, the social workers sought and secured a court order in retaliation, and also that Plaintiff was somehow being retaliated against for the exercise of her religious practice. This is a non-sequitur. Plaintiff has alleged no specific facts whatsoever pertaining to retaliation, instead, the SAC only presents arguments and conclusory statements in this regard. Plaintiff has not alleged that any Defendant has acted in any manner that might chill the exercise of constitutionally protected activity, or that any action at all by any Defendant was in any way

motivated as a response to Plaintiff's exercise of any constitutionally protected conduct. Having had two prior opportunities to amend, Plaintiff has still failed to articulate and allege a plausible First Amendment claim, and because granting leave to amend would be futile given that a proper basis could not be stated on amendment of the present set of allegations, Defendants' Motion (dkt. 51) is **GRANTED** as to Claim-1, which is **DISMISSED WITH PREJUDICE** as to all Defendants.

### _Claim-2 – Unreasonable Searches and Seizures:_

In Claim-2, Plaintiff submits that Defendants violated her right to be free from unreasonable searches and seizures under the Fourth Amendment. _Id._ at 20. In this regard, Plaintiff has fared better in alleging facts that might support a plausible claim as to a seizure of her person, and perhaps also of her phone. In pertinent part, Plaintiff has alleged that a number of unidentified deputies from the Sheriff's Office accompanied social workers to her home on August 7, 2017, for the execution of Judge Hinrichs's order for entry into and inspection of Plaintiff's home, as well as for a medical examination of her daughter. Plaintiff has alleged that one or more deputies seized her person and ordered her to remain seated on her couch for an unspecified period of time. Plaintiff has also previously alleged that one or more of the deputies may have seized her phone and prevented her from its use during that same period of time. Lastly, Plaintiff may have also alleged that she was seized by someone at the hospital when asked not to leave while her infant daughter was being examined by doctors. Additionally, although this argument has already been rejected by this court,[2] the SAC once again contends that Judge Hinrichs's order was invalid and thus, the court-ordered entry into, and inspection of, her home by social workers and deputies violated her rights under the Fourth Amendment.

A core protection of the Fourth Amendment is that searches and seizures inside a home without a warrant are presumptively unreasonable; however, because the ultimate touchstone of the Fourth Amendment is reasonableness, even the warrant requirement is subject to certain exceptions. _See Brigham City v. Stuart_, 547 U.S. 398, 403 (2006). This fundamental right, to be

---

[2] _See_ Order (dkt. 48) at 9.

free of unreasonable searches or seizures, is likewise applicable in the child welfare context. For example, in *Calabretta*, the court held that the warrantless, non-emergency search and seizure of an alleged victim of child sexual abuse at her home violated the Fourth Amendment. 189 F.3d at 814 (holding also that the general law of search warrants applies to child abuse investigations). As to the definition of a warrant – inherent in its concept is its issuance by a "neutral and detached magistrate," and "[t]he further requirement of "probable cause" [which] instructs the magistrate that baseless searches shall not proceed." *United States v. United States Dist. Court*, 407 U.S. 297, 316 (1972); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 453 (1971); and *Katz*, 389 U.S. at 356. The applicable standards for determining probable cause for a search warrant were most recently expounded in *Illinois v. Gates*, 462 U.S. 213, 246 (1983), defining probable cause to mean a "fair probability" that evidence is located in a particular place. Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a "commonsense, practical question." *Id*. Thus, certainty is not required, in fact, not even a preponderance of the evidence is required. *Id*.

On review, as in this case, courts will not "flyspeck" the affidavit supporting a search warrant through *de novo* review (*see United States v. Kelley*, 482 F.3d 1047, 1050-51 (9th Cir. 2007)); rather, reviewing courts are instructed to afford the issuing judge's determination great deference. *See Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). In addition, the Supreme Court has reminded reviewing courts that "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n.10 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

Here, because there was a court order authorizing the entry and search of her home, and because the order was issued by a neutral magistrate and supported by probable cause, Plaintiff's Fourth Amendment claim pertaining to the entry of her home, as well as the inspection of its interior, rests only on her conclusory statement that Judge Hinrichs's order was invalid because probable cause was lacking. In light of the standards just described, probable cause was not

19

lacking. Child welfare officials had received information from Plaintiff's ex-boyfriend as well as her mother that indicated that Plaintiff was pouring boiling water on her infant daughter. Plaintiff herself alleges in the SAC that she told Defendant Schneider that she would wrap her baby with rags soaked in hot tea, but had stopped a few months earlier. While Plaintiff argues that her own statement about tea-soaked rags versus the statements of two other persons about boiling water changes the probable cause equation, she is incorrect. Likewise, Plaintiff's allegation that her daughter's actual name was R.R., rather than I.A., as reflected in a document dated in September of 2017, is of no import. Plaintiff made clear in her conversation with Defendant Schneider on August 2, 2017, that the child in question – regardless of any name change – was in fact Plaintiff's infant daughter; likewise, the SAC leaves no doubt that the child in question is Plaintiff's daughter. Thus, under the totality of the circumstances, objectively viewed, there was more than a "fair probability" for Judge Hinrichs to find that there was reasonable cause to believe that Plaintiff's daughter had suffered, or would suffer, the type of harm described in California Welfare and Institutions Code § 300. Accordingly, the court finds that Plaintiff has failed to allege facts that could support a plausible claim that her right to be free from unreasonable searches was infringed by Defendants. Thus, to the extent that Claim-2 encompasses an unreasonable search component, Defendant's Motion to Dismiss (dkt. 51) is **GRANTED** and that component of Claim-2 is **DISMISSED WITH PREJUDICE** as to all Defendants because granting leave to amend would be futile given that a proper basis could not be stated on amendment of the present set of allegations.

As to the seizure component of Claim-2, as mentioned above, Plaintiff has complained in the SAC that she was seized by one or more deputies from the Sheriff's Office at her home on August 7, 2017, and perhaps also at the hospital on the same day. Additionally, Plaintiff had previously complained in the FAC that one or more of the same deputies also seized her phone for an unspecified period of time and prevented her from making calls.

The Fourth Amendment prohibits unreasonable searches <u>and</u> seizures, and the Supreme Court has defined seizure as "an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). *Brower* clarified the type of police action that constitutes a seizure

when the police initiate contact with an individual, and it should be noted that Fourth Amendment claims of unreasonable seizure also require courts to evaluate any force used after the initial contact and throughout "the course of an . . . investigatory stop." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Additionally, the application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of lesser magnitudes is termed an "arrest" under state law. *Dunaway v. New York*, 442 U.S. 200, 212-13 (1979) ("The mere facts that petitioner was not told he was under arrest, was not "booked," and would not have had an arrest record if the interrogation had proved fruitless, while not insignificant for all purposes, obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in *Terry* and its progeny.") (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

Here, while Plaintiff's allegations fall short of this standard, it is not clear if Plaintiff was *asked* to remain seated on her couch by the deputies in question or whether she was *forced* to do so. Further, if Plaintiff was forced to remain on her couch, the SAC does not make it clear for how long she was so detained, or by whom. Likewise, it is also unclear if Plaintiff is suggesting that someone at the hospital simply asked her not to leave while her child was being examined, or if Plaintiff was likewise seized at the hospital and, if so, by whom. However, because Plaintiff's allegations as to the seizure of her person and her property only address actions taken by one or more of the unidentified deputies from the Sheriff's Office, Defendants' Motion (dkt. 51) is **GRANTED** and the unreasonable seizure component of Claim-2 is herewith **DISMISSED WITH PREJUDICE** as to Defendants Schneider, Ellis, Enriquez-Paredes, Kalin, and Humboldt County because granting leave to amend as to those Defendants would be futile given that a proper basis could not be stated on amendment of the present set of allegations.

Further, because it is not clear that an amendment could not remedy the defects of Plaintiff's claim to the effect that her person or her phone were seized by one or more unidentified deputies from the Sheriff's Office on August 7, 2017, Defendants' Motion (dkt. 51) is **GRANTED IN PART, DENIED IN PART** and the unreasonable seizure component of Claim-2 is herewith **DISMISSED WITHOUT PREJUDICE** as to the unidentified deputies from the Sheriff's Office.

***Claim-3 – Excessive Force***:

Claim-3 alleges that Defendants subjected Plaintiff to excessive force. *See* SAC (dkt. 49) at 21. However, neither elsewhere in the SAC, nor within the body of Claim-3, does Plaintiff venture any further to describe the force that was used against her; instead, Plaintiff simply states that she was subjected to excessive force as a result of which she has suffered injuries. Because Plaintiff's companion allegation is that she was seized by one or more deputies, and perhaps that one or more of the same deputies also seized her phone, it appears that Plaintiff's excessive force claim is essentially a component of her unreasonable seizure claim; after all, if a seizure of one's person is unlawful, any force used at all is "excessive" force. In any event, as stated above, Fourth Amendment claims of unreasonable seizure also require courts to evaluate any force used after the initial contact and throughout the encounter. *See Graham*, 490 U.S. at 395. As was the case with the unreasonable seizure component of Claim-2, Plaintiff's allegations in Claim-3 only potentially relate to the one or more unidentified deputies from the Sheriff's Office by whom Plaintiff claims she was seized. In addition, in the conclusion to her Response to Defendants' Motion to Dismiss, Plaintiff specifically asks the court to dismiss her excessive force claim. See Pl.'s Opp. (dkt. 54) at 31.

Accordingly, as to Claim-3, Defendant's Motion (dkt. 51) is **GRANTED**, Plaintiff's excessive force claim is **DISMISSED WITH PREJUDICE** as to all Defendants because granting leave to amend would be futile given that a proper basis could not be stated on amendment of the present set of allegations.

***Claim-4 – Malicious Prosecution Under the Fourth Amendment***:

As stated earlier, Plaintiff has engaged in an exercise of mix-and-match as it relates to the substance of each of her claims, the named Defendants, and the provisions of law cited. Another example of Plaintiff's repetitive and confusing pleading is present in Claim-4, where Plaintiff asserts that the Fourth Amendment was violated by the institution of the above-described child welfare proceedings, and which "constituted malicious prosecution in that there was no basis for the Plaintiffs' (sic) seizure, yet Defendants continued with the prosecutions, which were resolved in Plaintiffs' (sic) favor." SAC (dkt. 49) at 21-22. First, it should be noted that the Fourth

Amendment does not address malicious prosecutions, and instead prohibits unreasonable searches and seizures, as well as setting forth certain requirements pertaining to the oath, the particularity, and probable cause foundations for warrants. Second, there is the fact that Plaintiff has not alleged that she was prosecuted at all. Instead, she has alleged that, based on a report from her ex-boyfriend and her mother, child welfare officials secured a court order authorizing a medical examination of her daughter which was reported to have revealed no evidence of abuse or neglect.

The tort of malicious prosecution, on the other hand, is premised on the existence of a *criminal* prosecution against the Plaintiff. *See e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior *criminal* proceeding in favor of the accused.") (emphasis added); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) ("Common-law malicious prosecution requires showing, in part, that a defendant instigated a *criminal* proceeding with improper purpose and without probable cause.") (emphasis added) (citing Restatement (Second) of Torts §653; Dobbs § 586 at 388-389; and Prosser & Keeton § 119 at 871). Thus, in order to state a § 1983 claim of malicious prosecution, a plaintiff must allege "that the defendants prosecuted [her] with malice and without probable cause, and that they did so for the purpose of denying [her] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to suits against prosecutors themselves, but may also be brought against other persons who may have wrongfully caused criminal charges to be filed. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002); *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

Here, Plaintiff has not alleged any of the elements necessary to make out a claim of malicious prosecution, under § 1983, or otherwise. Plaintiff has not alleged that any of the Defendants instigated any sort criminal proceeding against her; nor has Plaintiff therefore alleged that such proceedings were instigated with malice or for the purpose of denying a constitutional right. Although it was not a criminal proceeding, as to the child welfare proceedings which were instituted, the court has already found that the order pertaining to the entry into Plaintiff's home and for the medical examination of Plaintiff's daughter, was in fact supported by probable cause.

In addition, Plaintiff specifically asks for the dismissal of this claim. *See* Pl.'s Opp. (dkt. 54) at 31. Thus, as to Claim-4, Defendants' Motion (dkt. 51) is **GRANTED**. Plaintiff's malicious prosecution claim is **DISMISSED WITH PREJUDICE** as to all Defendants because granting leave to amend would be futile given that a proper basis could not be stated on amendment of the present set of allegations.

### *Claim-5 – Fifth Amendment Due Process Claim*:

In Claim-5, without elaborating any further, Plaintiff submits that she was subjected to a "deprivation of liberty without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution." SAC (dkt. 49) at 22. As stated, the SAC has appeared to take a shotgun approach to pleading, seemingly mentioning a grab-bag of constitutional amendments in nearly every claim. Because Claim-5 says nothing further, a thorough review of the remainder of the SAC reveals that by "deprivation of liberty," Plaintiff may be referring to "the right to family integrity and protections guaranteed by the United States Constitution in procedural and substantive due process." *Id*. at 2. Thus, Claim-5 appears to simply be a reiteration of the family integrity and family privacy component of Claim-1 (*see supra*.). For the same reasons described above, the court finds that Plaintiff has not alleged facts that would make out a claim that her rights to familial integrity or privacy were the subject of any constitutionally impermissible interference.

As with Claims 3 and 4, Plaintiff requests the dismissal of this claim as well. *See* Pl.'s Opp. (dkt. 54) at 31. Accordingly, as to Claim-5, Defendants' Motion (dkt. 51) is **GRANTED**, and Plaintiff's due process claim is **DISMISSED WITH PREJUDICE** as to all Defendants because granting leave to amend would be futile given that a proper basis could not be stated on amendment of the present set of allegations.

### *Claim-6 – Municipal Liability*:

In Claim-6, alleging municipal liability, Plaintiff contends that Defendant Humboldt County, acting through its Department of Health and Human Services, "developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference the Plaintiffs' (sic) constitutional rights which cause[d] the violation of

such rights." SAC (dkt. 49) at 23. Specifically, Plaintiff contends that these unnamed and undescribed policies, practices, or customs were willfully implemented with the specific intent to deprive Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution. *Id*. at 23-24. The court finds that Plaintiff's allegations pertaining to Claim-6 are entirely conclusory statements that have been presented in boilerplate fashion. Plaintiff has not alleged a single fact in connection with any policy, practice, or custom that related to any alleged violation of Plaintiff's constitutional rights. Accordingly, as to Claim-6, Defendants' Motion (dkt. 51) is **GRANTED**, and Plaintiff's municipal liability claim is **DISMISSED WITH PREJUDICE** because granting leave to amend would be futile given that a proper basis could not be stated on previous amendments of the present set of allegations.

***Claim-7 through Claim-11 – State-Law Claims:***

In Claim-7, Plaintiff submits that Defendants violated Article I, Section-4, of the California Constitution by "discriminating against Plaintiff[']s religious customs and in initiating [child welfare] proceeding[s] [that] were racially motivated and done without lawful justification or jurisdiction, and were designed to and did cause specific and serious psychological [damage] and suffering . . . ." SAC (dkt. 49) at 24-25. In Claim-8, Plaintiff argues that Defendants violated Article I, Section-13, of the California Constitution by subjecting Plaintiff "to unlawful search and seizure, [such that she was] coerced or forced out of her residence [which was] done without reasonable suspicion or probable cause . . . ." *Id*. at 25. In Claim-9, a malicious prosecution claim under the common law of California, Plaintiff submits that Defendants "maliciously commenced [j]uvenile proceedings against Plaintiff[']s children . . . falsely and without probable cause . . . [and that] were terminated/dismissed/unfound (sic) in Plaintiff[']s favor." *Id*. at 25-26. In Claim-10, brought under the California Unruh Civil Rights Act, Plaintiff contends that "[b]y conducting the complained of search in the manner described herein, [D]efendants interfered with [P]laintiff's federal and state constitutional and statutory rights by means of threats, intimidation, and/or coercion . . . ." *Id*. at 26-27. Lastly, in Claim-11, Plaintiff submits that "[b]y conducting the complained of search in the manner described," Defendants Schneider, Enriquez-Paredes, the unidentified Sheriff's Deputies, and the County of Humboldt, violated § 4030 of the California

Penal Code. *Id*. at 27.

Having dismissed all of the claims over which this court has original jurisdiction, this court has discretion to decline the exercise of supplemental jurisdiction of Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Un. Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Seattle Fishing Servs. Ltd. Liab. Co. v. Bergen Indus. & Fishing Co.*, 242 F. App'x 436, 439 (9th Cir. 2007) ("the district court had discretion to dismiss SFS's pendant state law claims upon properly dismissing SFS's § 1983 claim."); and *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). In fact, as it currently stands, given that the only bases for federal jurisdiction asserted by Plaintiff are her § 1983 claims, and "pendant jurisdiction" under 28 U.S.C. §1367 over her state law claims, Plaintiff cannot dispute that, if her federal claims fail, the court lacks subject matter jurisdiction over her remaining claims. As such, dismissal of Plaintiff's entire complaint would be proper under Rule 12(b)(1) because the court has already resolved all federal claims giving rise to this court's original jurisdiction in favor of Defendants, and thus, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction.").

Additionally, under § 1367(c)(2), this court has discretion to decline to exercise supplemental jurisdiction over a state-law claim if such claim "substantially predominates over the claim or claims over which it has original jurisdiction." Further, "[p]redomination under section 1367(c)(2) relates to the type of claim" and where "the state law claims essentially replicate the [federal] claims—they plainly do not predominate." *Lindsay v. Gov. Emps. Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006); *see also Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1224 (S.D. Cal. 2007) ("Given the disparity in terms of comprehensiveness of the remedy sought, state law claims substantially predominate over the ADA for purposes of 28 U.S.C. § 1367(c)(2)."); *Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1131 (S.D. Cal. 2005) (holding that disparity between monetary damages and

injunctive relief elevates state claims over federal claims); *Molski v. EOS Estate Winery*, No. CV 03-5880-GAF, 2005 WL 3952249, at *4 (C.D. Cal. July 14, 2005) (noting "[s]ince the state law claims provide for injunctive relief, the federal claim adds nothing to the lawsuit that could not be obtained in Superior Court.").

In light of this, as to the type of dismissal, the court is inclined to dismiss Plaintiff's state-law claims due to the nature of the state-law claims as they relate to Plaintiff's potentially-surviving unreasonable seizure claim – the only federal claim for which Plaintiff is being granted leave to amend. If Plaintiff chooses to file an amended pleading, re-pleading her § 1983 claim against the deputies whom she alleges seized her person and/or her phone – something which was not authorized by Judge Hinrichs's order – and that they used force against her, such would be a single federal claim based on a discrete set of facts. On the other hand, if one were to combine that single discrete § 1983 claim pertaining to the allegedly unauthorized seizure of her person and phone with Plaintiff's five state-law claims, the state-law claims would then predominate the federal claim in this litigation. Plaintiff's state-law claims are essentially a rehash of several of her now-dismissed § 1983 claims, except that they complain of violations of a number of state-law provisions about religious liberty and discrimination, unlawful search and seizure, being "coerced" out of her residence, being subjected to common-law malicious prosecution, certain alleged violations of the California Unruh Civil Rights Act, and certain asserted violations of provisions of the California Penal Code. The court finds that this is not merely a matter of some overlap between the unreasonable seizure claim that Plaintiff has been given leave to amend; instead, the court finds that these five state-law claims, if not dismissed, would "substantially predominate" over the single § 1983 claim on which Plaintiff has been granted leave to amend. Accordingly, as to Claim-7 through Claim-11, Defendants' Motion (dkt. 51) is **GRANTED** and Plaintiff's state-law claims are **DISMISSED** as to all Defendants.

### ***Scope and Nature of Leave to Amend***

Plaintiff is granted leave to file an amended pleading in order to articulate her unreasonable seizure claim. As stated above, Plaintiff has alleged that she was seized and ordered to remain seated on her couch by one or more deputies from the Sheriff's Office, and perhaps that her phone

was seized for a period of time as well. Plaintiff's amended pleading may present only that claim; and Plaintiff may only name those deputies believed to be responsible for the seizures at issue. Further, in filing her amended pleading, for any party whose name is not known, that person may be designated by a fictitious or numeric name (such as Deputy#1) and when the true name or names are discovered, Plaintiff may amend her pleading accordingly. Plaintiff's amended complaint must therefore plead fictitious, or doe defendants, in the caption of the complaint; it must also specifically articulate the basis for naming the defendants by other than their true identity (for example, if the identity is unknown); and, most importantly, the amended complaint must clearly specify the connection between the intended defendants and the conduct, activity or omission, upon which Plaintiff bases her unreasonable seizure allegations. Plaintiff must exercise reasonable diligence in ascertaining the true identity of the intended defendants, and thereafter Plaintiff must promptly move to amend the complaint in order to substitute the actual defendants in place of the fictional placeholders. Lastly, any amended pleading will have a clearly marked section entitled, "Statement of Facts," wherein Plaintiff shall take care, in an organized fashion, to present detailed factual allegations (i.e., what happened, how long it took, where it happened, who was involved, etc.) pertaining to the alleged seizures of her person and / or her phone.

//

//

//

//

//

//

//

//

//

//

//

//

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (dkt. 51) is **GRANTED IN PART, DENIED IN PART** and Plaintiff's Second Amended Complaint (dkt. 49) is **DISMISSED WITH PREJUDICE** as to all claims and parties except that Claim-2, as it relates to a number of unidentified deputies from the Sheriff's Office, is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is hereby **ORDERED** to file an amended pleading, if at all, no later than 30 days from the date of this Order. The failure to file an amended complaint will result in a dismissal of the case with prejudice.

**IT IS SO ORDERED.**

Dated: December 5, 2019

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California