UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CARRIE ANN CAPOLUPO,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF HUMBOLDT, *et al.*,<br><br>Defendants. | Case No. 18-cv-07458-RMI<br><br>**ORDER ON DEFENDANT HUMBOLDT COUNTY'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 64 |

Now pending before the court is a Motion (dkt. 64) filed by Defendant Humboldt County ("County") seeking dismissal from Plaintiff's Third Amended Complaint ("TAC") (dkt. 62). On February 25, 2019, the matter came to be heard at oral argument (dkts. 65, 66), following which Plaintiff was given leave to file a post-hearing brief in opposition (dkt. 67), to which the County has filed a reply brief (dkt. 80). For the reasons stated below, the County's request for a dismissal is granted in part, denied in part.

## BACKGROUND

Plaintiff's claim against the County was previously dismissed with prejudice from the Second Amended Complaint (dkt. 49), in which the County had been named under a municipal liability theory pertaining to policies and customs relating to its child welfare functions. *See* Order of December 5, 2020 (dkt. 60) at 24-25 ("Plaintiff's municipal liability claim is dismissed with prejudice . . ."). In that same order, while also dismissing all claims against the individual and institutional social worker defendants, the court granted Plaintiff leave to amend such that she could plead her claims against law enforcement defendants that had been mentioned in passing but not named as defendants. *See id*. at 27-28. Thereafter, in filing the TAC, Plaintiff named a number

1    of law enforcement officers, and also once again named the County, but under a new theory of
2    municipal liability that pertained to the role played by the law enforcement officers, rather than
3    social workers, in the alleged violation of her rights. *See* TAC (dkt. 62) at 2, 5. However, the
4    municipal liability claim in the TAC was given short-shrift when it came to factual allegations in
5    support of Plaintiff's claim against the County. *See id*. at 5. Accordingly, on January 17, 2020, the
6    County moved to dismiss Plaintiff's municipal liability claim with prejudice, arguing that the
7    inclusion of a municipal liability claim violated the court's previous order and exceeded the scope
8    of the leave to amend; and, that dismissal is independently warranted because Plaintiff's TAC has
9    failed to allege any of the required facts that might indicate the specific nature of any involved
10   policy or describe how any of the alleged actions attributed to the individual law enforcement
11   officers pursuant to such policy operated to allegedly violate her rights. *See* Def.'s Mot. (dkt. 64)
12   at 2, 7-9.

13   At the hearing of February 25, 2020 (dkt. 66), when the court asked Plaintiff why she had
14   not filed any written response to the County's motion seeking dismissal, Plaintiff responded that
15   she was under the impression that she could deliver her response orally at the hearing. *See* PDF
16   with attached audio recording (dkt. 66) at 00:30 - 1:01. The court then invited Plaintiff to respond
17   to the County's argument to the effect that it should be dismissed from the TAC because of
18   Plaintiff's failure to allege facts about a municipal policy to which the allegedly unlawful actions
19   of the law enforcement officers in this case may be attributed – Plaintiff responded that "[t]he
20   policy would be the issuing of the warrant, period, and that they brought, you know, six sheriffs
21   with them to enforce this policy, and in that, umm - - you know, they could see the home was - -
22   uh - - clean and safe and the children were healthy but yet I was still - - you know there's nothing
23   about seizing me in the warrant, it's just to get in the home to interview the child, and so - - umm
24   [inaudible] that policy alone allowed them to violate my - - umm." *Id*. at 3:27 - 4:02. The court
25   then asked Plaintiff whether she challenged a policy of the County that permitted the securing of
26   the warrant to enter her home under these circumstances, or whether Plaintiff challenged a County
27   policy pertaining to how the warrant was to be enforced, or both, and Plaintiff responded that she
28   challenged both. *Id*. at 4:02 - 4:26. During the course of the hearing, Defendants made clear that

1  the Motion to Dismiss (dkt. 64) was brought only by the County and that the individual law

2  enforcement defendants were not part of this motion to dismiss. *Id*. at 7:00 - 7:30.

3        In her post-hearing briefing, Plaintiff submits that it was her understanding that the

4  previous dismissal, with prejudice, of her claim of municipal liability against the County pertained

5  only to the County's child protective services functions and not necessarily to its law enforcement

6  functions. *See* Pl.'s Opp. (dkt. 67) at 4. In this regard, Plaintiff added that the County was the

7  "moving force" behind the law enforcement officers' allegedly flawed execution of the child

8  welfare investigation warrant, as well as the officers' "flagrantly disregard[ing] the[] scope of the

9  warrant [and] therefore amounting to deliberat[e] indifference towards [Plaintiff's] constitutional

10  rights." *Id*.

## DISCUSSION

12        Turning to the first of the County's two arguments in support of its request for a dismissal

13  with prejudice, the court notes that Plaintiff's apparent confusion about the nature of the court's

14  order previously dismissing her municipal liability claim counsels in favor giving her one final

15  chance to articulate her newly formulated municipal liability claim. As mentioned, the court

16  previously dismissed Plaintiff's municipal liability claim against the County with prejudice, as

17  well as dismissing Plaintiff's claims against the various social worker defendants also with

18  prejudice, while at the same time granting Plaintiff leave to amend her complaint such that she

19  could plead her claims against law enforcement defendants that had been mentioned in passing but

20  not named as defendants. *See* Order (dkt. 60) at 25, 27-28. Thus, in light of Plaintiff's *pro se*

21  status, and her apparent confusion about the nature and scope of the court's previous order, it

22  would be inequitable for the court to rely on a previous dismissal with prejudice of her municipal

23  liability claim, focused on social worker defendants, such as to operate as a bar to Plaintiff now

24  articulating a different municipal liability claim, focused on law enforcement defendants.

25        On the other hand, as to the County's secondary argument, some form of dismissal of

26  Plaintiff's municipal liability claim, as currently pleaded (*see* TAC (dkt. 62) at 5) is unavoidable

27  due to the defect that is manifest in the TAC's failure to allege facts as to the nature of any

28  municipal policy involved, as well as the failure to provide any description about how any of the

alleged actions attributed to the individual law enforcement officers were made pursuant to such policy. *See* Def.'s Mot. (dkt. 64) at 2, 7-9. Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss may be granted with or without prejudice, and with or without leave to amend. In this regard, district courts have been instructed to "grant leave to amend even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Here, while the TAC has alleged nearly nothing to support a claim of municipal liability under the standards previously set forth for Plaintiff (*see* Order of May 31, 2019 (dkt. 48) at 15), Plaintiff's statements at the hearing mentioned above take a substantial step in the right direction, giving her municipal liability claim a hint of conceivability. Therefore, despite the fact that the claim is still subject to dismissal, the court cannot conclude that it is not possible for Plaintiff to allege sufficient facts to state a plausible claim for relief if given one <u>final</u> opportunity to amend such that Plaintiff can "nudge[] [her] claim[] across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]

Accordingly, because Plaintiff is proceeding *pro se*, the court will provide further, more detailed guidance on the applicable standards for the articulation of a cognizable claim for municipal liability. As previously noted (*see* Order (dkt. 48) at 15), local government entities are considered "persons" for the purposes of being subject to liability under 42 U.S.C. § 1983 in cases where an official policy or custom associated with that local government entity causes a constitutional tort. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). However, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of County Comm'rs v. Brown*, 520 U.S. 397,

---

[1] Plaintiff has already had ample opportunities for amendment. Plaintiff's original Complaint (dkt. 1) was amended as a matter of course in lieu of responding to Defendants' first dismissal motion. Thereafter, the court granted Plaintiff leave to amend following the dismissal of her First Amended Complaint (*see* Order of May 31, 2019 (dkt. 48)); and the court again granted Plaintiff leave to file an amended pleading following the dismissal of her Second Amended Complaint (*see* Order of December 5, 2019 (dkt. 60)). Thus, this will be Plaintiff's final opportunity to file an amendment to her operative complaint because while Plaintiff's *pro se* status entitles her to some degree of leniency when it comes to the enforcement of the rules and norms of orderly litigation procedure, it does not mean that the court must give unlimited opportunities for filing amended complaints.

403 (1997); *Monell*, 436 U.S. at 691. Thus, Plaintiff is reminded that the County may not be sued under this approach simply because Plaintiff thinks that as an employer the municipality should be held to account for its employees' unlawful actions. Instead, in order to properly impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40*, 130 F.3d 432, 438 (9th Cir. 1997); *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). It is not enough for Plaintiff to simply allege that some policy, custom, or practice exists that somehow caused the alleged constitutional violations (*see AE ex rel. Hernandez*, 666 F.3d at 636-37); instead, Plaintiff must allege sufficient facts regarding the specific nature of that policy, custom or practice such as to allow the County to effectively defend itself, and those alleged facts must plausibly suggest that Plaintiff is entitled to relief against the County. *See id*. at 637.

Additionally, as it appears related to the instant context, the court will also note that holding a municipality liable in the absence of a formal governmental policy (that is, a *Monell* claim based upon an omission rather than an actual and existing policy) appears to be more or less interchangeable with those cases finding liability based upon a custom or practice. *See e.g., Matysik v. Cnty. of Santa Clara*, No. 16-CV-06223-LHK, 2018 U.S. Dist. LEXIS 19552, at *32-37 (N.D. Cal. Feb. 6, 2018). In such cases, ones that are focused on discussing a custom or practice rather than a formal policy, a plaintiff may instead establish the existence a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). For present purposes, certain customs can be viewed as the substantial equivalent of a policy or a law because, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404 (citing *Monell*, 436 U.S. at 690-91); *Thomas v.*

*Baca*, 514 F. Supp. 2d 1201, 1206 (C.D. Cal. 2007). As is the case when bringing a *Monell* claim based on a policy, Plaintiffs relying on a custom must allege facts that make clear that the relevant custom was the "moving force" behind the constitutional injuries, which would require Plaintiff to establish that the custom is "closely related to the ultimate injury," and that the injury "would have been avoided had proper policies been implemented." *Thomas*, 514 F. Supp. 2d at 1206 (quoting *Long v. County of L.A.*, 442 F.3d 1178, 1190 (9th Cir. 2006)). It should not go without mention, however, that liability for an allegedly improper custom may not be predicated upon an isolated or sporadic event or events; instead, "it must be founded upon practices of sufficient duration, frequency and consistency [such] that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

Under a different approach, municipal liability may also be imposed for a single decision by a municipal policy-making official, at least under certain circumstances. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In such cases, it is possible for a single decision rendered by such an official to constitute an act of official government policy. *Id*. However, not every such decision by a municipal officer would automatically subject the municipality to § 1983 liability. *See id*. at 481. This species of municipal liability attaches only where the decision-making official possesses final authority to establish municipal policy with respect to the action ordered. *Id*. Further, "[t]he [mere] fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion . . . [in addition] [t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id*. at 481-83. Plaintiff should note that the question of "[w]hether a particular official has 'final policymaking authority' is a question of state law" (*Praprotnik*, 485 U.S. at 123), and thus, it would be for the court to identify the officials whose decisions might constitute the official policy of a municipality or other governmental unit. *See Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989). Hence, under this approach, § 1983 municipal liability only lies if there is a deliberate choice to follow a particular course of action, from among various alternatives, and which is exercised by an official, or officials, that are in fact responsible for the establishment of

6

final policy with respect to the subject matter in question. *See Pembaur*, 475 U.S. at 483 (finding municipal liability where a county prosecutor made a decision and directed officers to forcibly enter the petitioner's clinic, causing a violation of petitioner's Fourth Amendment rights). Additionally, under the ratification doctrine, if a municipal policy-making official ratifies any unconstitutional conduct, this may also be sufficient to trigger § 1983 municipal liability. *See Praprotnik*, 485 U.S. at 127.

As mentioned above, in the absence of a formal policy, a plaintiff could base a *Monell* claim on "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). Where "[l]ability for improper custom may not be predicated on isolated or sporadic incidents [] [and] must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out [*de facto*] policy" (*Trevino*, 99 F.3d at 918); on the other hand, with respect to an adopted municipal policy, a single incident *can* serve as the basis of a *Monell* claim so long as "proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). It should also be noted that, in certain contexts, the "lack of affirmative policies or procedures to guide employees can amount to deliberate indifference even when other general policies are in place." *Claypole v. County of San Mateo*, No. 14-cv-2730-BLF, 2016 U.S. Dist. LEXIS 3849, 2016 WL 127450, at *11 (N.D. Cal. Jan. 12, 2016). Thus, if the need to remedy an omission in the framework of a municipality's policies is so obvious that the inadequacy is clearly likely to result in the violation of constitutional rights, the policymakers of that municipality can reasonably be said to have been deliberately indifferent to the need to remedy that omission. *See id*.

An illustrative example is present in *Long v. County of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006), where an elderly man suffering from congestive heart failure reported to the county jail to serve a four-month sentence, during the first few weeks of which he received uncoordinated and inadequate medical care and ultimately died; whereupon it was held that the plaintiff had raised a triable issue regarding whether the county's failure to institute several

7

relevant policies amounted to deliberate indifference to that person's constitutional rights. *See id.*; *see also Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (upholding a jury verdict based on a sheriff's refusal to create a procedure to remedy the problem of untimely arraignments). Likewise, in *Gibson v. County of Washoe*, 290 F.3d 1175, 1180 (9th Cir. 2002), a person with manic depressive disorder was arrested during one of his manic phases when he was combative and difficult to control, and although the jail medical staff noted that the he had psychotropic medications with him at the time of his arrest, the jail medical staff did not act on this information, and eventually, he suffered a heart attack and died while several deputies were trying to restrain him. *Id*. at 1182-83. While Washoe County had policies requiring arresting officers to give the jail medical staff any prescription medications found with an incoming detainee, and a policy requiring jail medical staff to secure the medication in the infirmary, there was no policy that required the jail medical staff to "act on any information that the medication might bear." *Id*. at 1195. Washoe County policy also precluded medical evaluations from being conducted for any detainees who were uncooperative, combative, or intoxicated. *Id*. In that case, it was ultimately held that there was a triable issue as to whether Washoe County's policy-based failure to require the jail medical staff to act on information that they learned from a detainee's prescription label caused that person's death. *See id*. at 1195-96; *see also Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir. 1999) (requiring prisons to provide prisoners with a transitional supply of medication upon release based on the recognition that "as a matter of common sense . . . a prisoner's ability to secure medication 'on his own behalf' is not necessarily restored the instant he walks through the prison gates and into the civilian world"); *see also United States v. County of Los Angeles*, No. CV 15-5903 DDP (JEMx), 2016 U.S. Dist. LEXIS 65049, 2016 WL 2885855, at *5 (C.D. Cal. May 17, 2016) (citing *Wakefield* in a case about the necessity of discharge planning for inmates with dementia, among other disabilities, for the proposition that "Defendants presumably do not, and could not, for example, simply show a severely ill inmate to an exit without any concern for what might befall that inmate on the other side of the door.").

Lastly, Plaintiff may allege *Monell* liability on the basis of inadequate training or a failure to train, because "the inadequacy of police training may serve as the basis for Section 1983

8

liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The court will also note that a failure to train may support a *Monell* claim only when the flawed training, or lack of training, itself caused the constitutional violation — not in situations where an errant employee caused a constitutional violation, despite adequate training, as this ensures that responsibility lies with the correct entity. *See Waggy v. Spokane Cnty.*, 594 F.3d 707, 713 (9th Cir. 2010).

## CONCLUSION

Thus, Plaintiff is instructed to carefully consider the above-provided guidance, and to conduct any necessary investigation and inquiry, such that if Plaintiff elects to re-present a claim based on municipal liability, such claim would not be based merely on bare conclusory allegations that do not put the County on notice of the specific policies, acts, omissions, customs or alleged deficiencies in training that she may allege to have been the cause of the alleged constitutional violation at issue. For the reasons stated above, Plaintiff fails to allege any theory of *Monell* liability that would be sufficiently articulated such as to survive the County's motion to dismiss. Therefore, the County's Motion to Dismiss (dkt. 64) is **GRANTED IN PART, DENIED IN PART**, and Claim-1 in the TAC (dkt. 62 at 5) is **DISMISSED** without prejudice because the deficiencies therein may conceivably be cured by amendment in light of the guidance provided above. If Plaintiff wishes to re-present her municipal liability claim, she is hereby **ORDERED** to file a supplemental complaint containing only the municipal liability claim along with any necessary underlying factual allegations no later than 30 days from the date of this order.

Further, due to COVID-19, the McKinleyville Federal Courthouse remains closed and all documents sent there by U.S. Mail are forwarded to the San Francisco Federal Courthouse where the mail is processed twice a week. *See* General Order 73. To avoid mail-related delays, Plaintiff may elect to file her documents electronically. Pursuant to General Order 72-2, *pro se* litigants are not required to request permission from the assigned judge to use the court's Electronic Case Filing ("ECF") system pending further notice. Plaintiff may register for electronic filing through the court's ECF system, as well as registering for the PACER system to retrieve court documents.

E-filing registration instructions for pro se litigants are available on the court's website at: https://www.cand.uscourts.gov/cases-e-filing/cm-ecf/setting-up-my-account/register-for-e-filing-pro-se-litigants/. If Plaintiff has any questions about how to register, she may call 415-522-2000, or Plaintiff may communicate her questions by e-mail ECFHELPDESK@cand.uscourts.gov.

**IT IS SO ORDERED.**

Dated: May 5, 2020

_____
ROBERT M. ILLMAN
United States Magistrate Judge