UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CARRIE CAPOLUPO,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF HUMBOLT, et al.,<br><br>    Defendants. | Case No. 18-cv-07458-RMI<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 82, 85 |

Now pending before the court are two Motions to Dismiss Plaintiff's currently operative complaint.[1] The first Motion to Dismiss (dkt. 82), filed by Humboldt County Sheriff's Officers Allen, Hicks, Filippini, Wilcox, and Young (collectively referred to herein as "Officer Defendants"), seeks dismissal of the TAC (dkt. 62) without further leave to amend. The second Motion (dkt. 85) filed by County and Officer Defendants seeks dismissal of Plaintiff's Supplemental Third Amended Complaint (dkts. 83 and 62) without further leave to amend. Plaintiff has responded (dkt. 87) and Defendants have replied (dkt. 88). For the reasons stated below, Officer Defendant's request for dismissal is denied and the County's request for dismissal is denied.

## BACKGROUND

Proceeding *pro se*, Plaintiff Carrie Capolupo filed a TAC (dkt. 62) against the County and

---

[1] After this court granted Defendant Humboldt County's ("County") motion to dismiss the Third Amended Complaint ("TAC"), the individual Officer Defendants filed a separate motion to dismiss the TAC on May 12, 2020, on the ground that the detention and temporary seizure of Plaintiff's phone during the execution of a search warrant did not violate Plaintiff's constitutional rights, and that they are otherwise entitled to qualified immunity. *See* Officer Defs.' Mot. (dkt. 82).

Officer Defendants, in which the County had been named under a municipal liability theory pertaining to the "specific policies, acts, omissions, customs or alleged deficiencies in training that she may allege to have been the cause of the alleged constitutional violation at issue." *See* TAC (dkt. 62) at 5. This court granted the County's motion to dismiss Plaintiff's TAC, noting that "Plaintiff fails to allege any theory of *Monell* liability that would be sufficiently articulated such as to survive the County's motion to dismiss . . ." and gave Plaintiff a final opportunity to file a Supplement to the TAC "containing only the municipal liability claim along with any necessary underlying factual allegations no later than 30 days from the date of this order." *See* Order of May 5, 2020 (dkt. 81) at 9 (". . . the deficiencies. . . [in the TAC] may conceivably be cured by amendment in light of the guidance provided above.")

*Plaintiff's Claims in the Supplemental TAC*:

Thereafter, Plaintiff filed a Supplement (*see* dkt. 83) to the TAC, both of which (collectively referred to herein as the "STAC") are the subject of the pending motions to dismiss. The Supplement contains an introduction, a section on jurisdiction, a section that names the parties, including the initial five Officer Defendants and the County (and adding Sheriff William Honsal), a statement of facts, a long discussion of two Humboldt County Sheriff's Office policies, and a single claim for relief. In that claim, Plaintiff expressly names the County and Sheriff William Honsal, and faults both parties for "Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fourteenth, and Amendments (sic) and in violation of 42 U.S.C. § 1981 (sic)." *See* Suppl. TAC (dkt. 83) at 15, 17.[2]

The STAC also alleges a Fourth Amendment claim against individual officers. *See* TAC (dkt. 62) at 5-6. Plaintiff expressly names Allen, Hicks, Filippini, Wilcox, and Young as the

---

[2] Rule 10(c) of the Federal Rules of Civil procedure allows for the incorporation by reference of prior allegations. Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. Furthermore, "[a] complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Since this court ordered Plaintiff to supplement her TAC, her Supplement and TAC equates to one document, the STAC, that is the operative complaint.

2

"Officer Defendants" who allegedly violated her right to be free from unreasonable seizures. To quote the complaint, "[i]n repeatedly seizing plaintiff (sic) phone, Officer Wilcox and Officers violated plaintiff (sic) clearly established Fourth Amendment right under the United States Constitution." *Id.* at 6-7.

*Plaintiff's Factual Allegations*:

The Supplement to the TAC contains a similar set of factual allegations that were pleaded in the TAC, as well as attempts to correct the deficiencies in the TAC with respect to the municipal liability claim. *See generally* Suppl. TAC (dkt. 83). Plaintiff again alleges that on August 7, 2017, Officer Defendants entered her home while displaying handcuffs and weapons and, using "forceful" language, "commanded plaintiff to sit on the couch" while Child Welfare Services ("CWS") interviewed Plaintiff's children. *Id.* at 5. During the encounter, Plaintiff alleges that she was not merely instructed, but rather "forced to sit on the couch for approximately forth-five (sic) minutes by the DEFENDANTS, so [CWS] officers could conduct their investigation of plaintiff (sic) children." *Id.* Plaintiff alleges that she needed to breastfeed her one-year-old child and feed her four-year-old child during the time she remained on the couch. *See* Pl.'s Opp. (dkt. 87) at 8.

Then, Plaintiff picked up her phone, at which point she alleges that Officer Wilcox "seized plaintiff and made contact with plaintiff to take the her (sic) phone out of her hand and placed it on the table." Suppl. TAC (dkt. 83) at 5. Officer Wilcox "[t]hen told Plaintiff she could not use her phone [and] then sat the phone on the table and told plaintiff to remain sitting on the couch." *Id.* When Plaintiff protested the alleged seizure, Officer Wilcox again "told plaintiff to remain sitting on the couch." *Id.* At some point, after being detained inside her home for approximately forty-five minutes, Plaintiff grabbed her phone and began filming the investigation of her home with the camera. *Id.* at 5-6.

Plaintiff alleges that a second unlawful seizure occurred when Officer Defendants "coerc[ed]" Plaintiff to the hospital. *See* Suppl. TAC (dkt. 83) at 6; *see also* Pl.'s Opp. (dkt. 87) at 9. In the STAC, Plaintiff contends that Officer Defendants "coerc[ed]" her "to leave her residence and go to the emergency room for a medical exam for her children," and that she only felt free to

leave the emergency room when the officers were no longer present.[3] Suppl. TAC (dkt. 83) at 6. Plaintiff alleges that these actions were intentional and "pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decision, policy, training, and supervision of the COUNTY and WILL acting under color of state law." *Id.* at 7. In other words, Plaintiff's claim is not only that the Officer Defendants unreasonably seized her person and her phone in violation of her rights, but also that the County's policies resulted in the violation of her rights under the Fourth Amendment.

As instructed in the May 5, 2020 Order, Plaintiff identifies two policies from the Humboldt County Sheriff's Office policy manual in support of her claim against the County. *Id.* at 7, 9. First, Plaintiff identifies the Sheriff's Search and Seizure Policy, which states that the Sheriff's Office and its officers will respect the privacy rights of individuals, that seizures will comply with relevant federal and state law, and that the Department will provide relevant training as guidance for the application of current law as appropriate. *Id.* at 7-8. Second, Plaintiff identifies Policy 613.8 (now titled Policy 614.8)[4] regarding detentions during warrant service (which appears to be the basis of the officers' authority to initially seize Plaintiff) and quotes from the Humboldt County Sheriff's Office policy manual. *See* Suppl. TAC (dkt. 83) at 10; *see also* Pl.'s Opp. (dkt. 87) at 3. The manual states:

> Deputies must be sensitive to the safety risks of all persons involved with the service of a warrant. Depending on circumstances and facts present, it may be appropriate to control movements of any or all persons present at a warrant service, including those who may not be the subject of a warrant or suspected in the case. However, deputies must be mindful that only reasonable force may be used and weapons should be displayed no longer than the deputy reasonably believes is necessary (see the Use of Force Policy). As soon as it can be determined that an individual is not subject to the scope of a warrant and that no further reasonable suspicion or safety concerns exist to justify further detention, the person should be promptly released.

Suppl. TAC (dkt. 83) at 10. Plaintiff repeats that she was not promptly released but rather detained

---

[3] To the extent that Plaintiff seeks to reassert an excessive force claim (Pl.'s Opp. (dkt. 87) at 9), the court previously dismissed this claim with prejudice as to all Defendants. *See* (dkt. 60) at 22.

[4] Humboldt County Sheriff's Office policy manual, https://humboldtgov.org/DocumentCenter/View/86838/HCSO-Policy-Manual (Last visited August 18, 2020.)

4

for forty-five minutes in violation of the County's above policy. *Id.*

It might be that Plaintiff is alleging that the County does have a policy, and that the Officer Defendants violated it, which is simply officer liability, but she also alleges that the County does not have a policy regarding police behavior during child welfare interviews, and illustrates this alleged omission in several ways. For example, she contends that the County's policy regarding detention during criminal search warrants gave the Officer Defendants "leeway to abuse their discretion and amounted to [a] disregard of Plaintiff's rights" despite a lack of evidence of criminal activity in this case. *Id.* at 5. Furthermore, she submits four questions in the STAC: "Who protects the plaintiff (sic) Federal and State rights wen (sic) CPS executes a warrant, pursuant to the above policy? Who is the lead officer when CPS and Sheriffs (sic) deputies work together on a Warrant for children? Does (sic) sheriff deputies enforce (sic) CPS officers to follow the Order within the warrant? Who protects and enforces the boundaries of a warrant during execution?" *See* Suppl. TAC (dkt. 83) at 8.[5] Plaintiff summarizes these questions by suggesting that these questions "need to be addressed by policies that should be set in place by Humboldt County Sheriff" and others, and that "omission of such policies" were the "moving forces" behind the violation of Plaintiff's Fourth Amendment rights. *Id.* at 10, 18. Plaintiff also repeats concerns about the County's inadequate training throughout the STAC, suggesting that "injury to the plaintiff could have been avoided had COUNTY and WILL adequately trained DEFENDANTS and instituted adequate general policies to guide the DEFENDANTS when working with CPS officers . . . ." *Id.* at 8. Plaintiff adds that the County should have instituted another policy regarding officer behavior in a person's home when all justifications that authorize detention during certain criminal searches pursuant to a warrant are absent. *See generally* Suppl. TAC (dkt. 83); *see also* Pl.'s Opp. (dkt. 87) at 6-7. Thus, these allegations boil down to a concern about the omission of a policy or policies.

*Plaintiff's Response to the County's Motion to Dismiss the STAC*:

Plaintiff's Response to the County's motion to dismiss the STAC further clarifies her municipal liability claim against the County. Specifically, Plaintiff explains that each of the three

---

[5] It is assumed that CPS refers to "child protective services," which prior pleadings have referred to interchangeably with CWS.

5

1    prongs required to establish a *Monell* claim are present in this case: (1) a deprivation of her
2    constitutional right "to be secure in her home;" (2) a municipal policy existed (Policy 613.8, which
3    allows for "controlling movements of any or 'all persons' present at warrant service including
4    those who are and are not subject of the warrant") and omission of a policy regarding CWS
5    searches; and (3) that a policy or omission of a policy was the "moving force" behind her alleged
6    Fourth Amendment violations. *See* Pl.'s Opp. (dkt. 87) at 6-7.

7    In addition to reiterating her *Monell* claim, Plaintiff responds to the County and Officer
8    Defendants' arguments, suggesting that each of the rationales provided are inapplicable here.
9    Specifically, Plaintiff discusses the three main law enforcement interests that have historically
10   justified detention of persons during the execution of a search warrant in a person's home in
11   criminal cases, including: (1) preventing flight in the event that incriminating evidence is found;
12   (2) minimizing the risk of harm to the officers and occupants; and (3) facilitating the orderly
13   completion of the search. Plaintiff argues that the interests of law enforcement officers when
14   executing a criminal search warrant do not apply in the context of a court-authorized inspection
15   and medical examination of children by CWS. *Id.* at 7-8.

*County and Officer Defendants' Reply*:

17   In reply, the County and Officer Defendants ("Defendants") suggest that the seizure of
18   Plaintiff's phone "was justified as incident to controlling the scene during examination of the
19   children" and thus should be dismissed with prejudice. *See* Defs.' Reply Br. (dkt. 88) at 5-6. The
20   Defendants argue that the officers' authority and the applicable justifications to detain persons
21   incident to the execution of a search warrant apply to any valid search warrant, not only criminal
22   search warrants. *Id.* at 5-6. To support this position, Defendants cite to *Michigan v. Summers*, 452
23   U.S. 692 (1981) and *Dawson v. City of Seattle*, 435 F.3d 1054 (9th Cir. 2006). *Id.* at 6. In
24   *Summers*, the Supreme Court held that detention of an individual during execution of a search for
25   contraband (e.g., heroin) was lawful, and Defendants add that, in *Dawson*, the Ninth Circuit found
26   that "the holding in *Michigan v. Summers* applies equally in the context of enforcing
27   administrative warrants and orders." *Id.* Defendants argue that because the same justifications
28   apply to administrative and criminal search warrants, the appropriate inquiry is whether the

6

1  detention was "objectively reasonable under the circumstances . . . ." *Id*. at 7. Finally, the County
2  asserts that Plaintiff failed to allege municipal liability because Plaintiff essentially alleges that the
3  officers "acted in *excess* of [the] policy." *Id.* at 8. Thus, the County argues that Plaintiff failed to
4  state facts supporting the necessary elements to state a *Monell* claim, and that the County's motion
5  to dismiss the STAC should be granted with prejudice. *Id.* at 11.

## STANDARD OF REVIEW

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws," that were perpetrated by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983; *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978). In the present context, in order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); thus, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party," *Wyler Summit Partnership v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998), the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, mere recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Further, because Plaintiff is unrepresented, this court will construe her pleadings and arguments liberally, interpreting them to raise the strongest arguments they suggest. *See Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("[c]ourts have a duty to construe pro se pleadings liberally, including pro se motions").

Dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of pleaded facts that would entitle her or him to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). For a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly

7

1  suggest a claim entitling the plaintiff to relief. *Moss v. United States Secret Serv.*, 572 F.3d 962,
2  970 (9th Cir. 2009).

## DISCUSSION

4  To put it briefly, the Officer Defendants' motion to dismiss the TAC argues that Plaintiff fails to state a plausible claim for unlawful seizure, and, even if the claim is sufficiently pled, that the motion to dismiss should be granted because they are entitled to qualified immunity. *See generally* Officer Defs.' Mot. (dkt. 82). The gist of the County and Officer Defendants' motion to dismiss the STAC is that Plaintiff impermissibly asserts new claims, including claims that were previously dismissed with prejudice; that she failed to obtain leave of court to add Sheriff William Honsal as a defendant; and that she failed to properly assert a claim for municipal liability under Section 1983 by failing to allege sufficient facts to (1) show that she was deprived of a constitutional right; (2) show that the County had a policy or custom; and (3) show that a policy or custom (or lack of a policy) was the moving force behind the constitutional violation. *See generally* Defs.' Mot. (dkt. 85).

### ***Improperly Added Claims and Attempt to Add a Party***

In dismissing Plaintiff's previously operative complaint, the court granted Plaintiff leave to supplement the TAC – but "*only the municipal liability claim, along with any necessary underlying factual allegations*." *See* Order of May 5, 2020 (dkt. 81) at 9 (emphasis added). However, rather than solely re-allege the municipal liability claim and factual allegations in support of it, Plaintiff went beyond the scope of the Order in multiple ways, such as alleging claims that were previously dismissed with prejudice. For example, Plaintiff's STAC again attacks the sufficiency of the warrant allowing the examination of her children, claiming "there was no order in the warrant or circumstance that gave CWS the authority to take children into custody or order Plaintiff to facilitate the medical exam for the second child." Pl.'s Opp. (dkt. 87) at 5-6. Claims regarding the sufficiency of the warrant, however, and claims against CWS, were all previously dismissed with prejudice. *See* Order of December 5, 2020 (dkt. 60); *see also* Defs.'

8

Mot. (dkt. 85).[6] Thus, references to the adequacy of the warrant, as well as new allegations in the Supplement to the TAC completely unrelated to municipal liability, like her claim regarding the First Amendment, need not be addressed and are **DISMISSED**. *See* Suppl. TAC (dkt. 83) at 5, 12, 16.

Plaintiff's attempt to add Sheriff William Honsal as a defendant is also impermissible. The scope of the court's leave to supplement the TAC was limited to adding factual allegations in support of her municipal liability claim only. *See* Order of May 5, 2020 (dkt. 81) at 9. In contravention of that Order, Plaintiff has attempted to add Sheriff William Honsal as a defendant, sued in his official capacity. *See* Suppl. TAC (dkt. 83) at 1. Because Plaintiff had not sought or received leave of court to add Sheriff William Honsal to this action; because his inclusion contravenes the court's May 5, 2020 Order (dkt. 81); and because Defendants have objected (*see* Defs.' Mot. (dkt. 85) at 2, 6, 11, 14-24) – the court finds that Plaintiff has improperly attempted to add Sheriff William Honsal as a party. In any event, "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 n. 8 (9th Cir. 2002). "'For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed.'" *Fontana v. Alpine County*, 750 F. Supp. 2d 1148, 1154 (E.D. Cal. 2010) (quoting *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997)).

Accordingly, it is herewith **ORDERED** that Sheriff William Honsal is **DROPPED** from this action. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

//

---

[6] In a prior Order (dkt. 60) dismissing the claims in Plaintiff's SAC, the court discussed at length the application for the warrant authorizing the entry into Plaintiff's home, an interview and medical exam, as well as the associated findings and orders of Judge Hinrichs of the Humboldt County Superior Court, Juvenile Division. *See* Defs.' Mot., Exh. A (dkt. 23-1 *SEALED*) at 2-9. On August 3, 2017, social worker Defendant Kristin Ellis appeared before Judge Hinrichs to petition for a warrant. *Id.* at 6, 8-9. Consequently, a case was opened in the Juvenile Division of the Humboldt County Superior Court, styled, "In the matter of: I.A. and B.M.K." *Id.* at 6. The petition was filed by a Deputy County Counsel, seeking an order permitting entry into Plaintiff's home, an interview with both of Plaintiff's children, and a medical examination for Plaintiff's infant daughter. *Id.* at 6, 9.

#### *Causes of Action*

In light of the rulings made above, the court finds that the STAC delineates two separate causes of action: Claim-1, a *Monell* claim against the County, and Claim-2, an unlawful seizure claim against Officer Defendants. The court will address the arguments for dismissal of the claims in turn.

*Claim 1 – Municipal Liability*:

The court will begin by noting that, as discussed in the May 5, 2020 Order, holding a municipality liable in the absence of a formal governmental policy (that is, a *Monell* claim based upon an omission rather than an actual and existing policy) appears to be more or less the same as finding liability based upon a custom or practice. *See e.g., Matysik v. Cnty. of Santa Clara*, No. 16-cv-06223-LHK, 2018 U.S. Dist. LEXIS 19552, at *32-37 (N.D. Cal. Feb. 6, 2018). In cases that are premised on a custom or practice rather than a formal policy, a plaintiff may establish the existence of a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). For present purposes, certain customs can be viewed as the substantial equivalent of a policy or a law because, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 690-91); *Thomas v. Baca*, 514 F. Supp. 2d 1201, 1206 (C.D. Cal. 2007). As is the case when bringing a *Monell* claim based on a policy, plaintiffs relying on a custom must allege facts that make clear that the relevant custom was the "moving force" behind the constitutional injuries, which would require a plaintiff to establish that the custom is "closely related to the ultimate injury," and that the injury "would have been avoided had proper policies been implemented." *Thomas*, 514 F. Supp. 2d at 1206 (quoting *Long v. County of L.A.*, 442 F.3d 1178, 1190 (9th Cir. 2006)). It should not go without mention, however, that liability for an allegedly improper custom may not be predicated upon an isolated or sporadic event or events; instead, "it must be founded upon practices of sufficient duration, frequency and consistency [such] that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d

at 918.

Here, Plaintiff meets this standard. She alleges sufficient facts to demonstrate all three prongs of a *Monell* claim. First, Plaintiff explains that Defendants deprived her of her Fourth Amendment right "to be secure in her home." *See* Pl.'s Opp. (dkt. 87) at 6. Second, she again explains the municipality's reliance on an inapplicable policy. *Id*. Third, she notes that there are policies that "should be set in place by Humboldt County Sheriff" and others, and that "omission of such policies" were the "moving forces" behind the violation of Plaintiff's Fourth Amendment rights. *See* Suppl. TAC (dkt. 83) at 10, 18. Plaintiff has illustrated a custom or practice of sufficient duration, as the law requires, given that the County has not provided evidence or even argued that they have established a policy for officer interactions with individuals in executing administrative warrants (the different Fourth Amendment concerns in context of criminal versus administrative warrants are discussed below).

Thus, Plaintiff has alleged a claim against the County under the *Monell* standard for municipal liability. The court finds that Plaintiff's allegations pertaining to Claim-1 sufficiently suggest that the County's lack of a policy regarding the treatment of individuals during a court-ordered child welfare interview and inspection was the moving force behind the alleged violation of Plaintiff's constitutional rights under the Fourth Amendment. Accordingly, as to Claim-1, the Motion to Dismiss (dkt. 85) is **DENIED**.

*Claim 2 – Unreasonable Seizure*:

In Claim-2, Plaintiff submits that the Officer Defendants violated her right to be free from unreasonable searches and seizures under the Fourth Amendment. *See* TAC (dkt. 62) at 5-6. As in the SAC, Plaintiff complains that she was seized by one or more deputies from the Sheriff's Office at her home on August 7, 2017, when she was forced to sit on her couch, when her phone was taken from her by Officer Wilcox, and also on the way to the emergency room.

The Fourth Amendment prohibits unreasonable searches and seizures, and the Supreme Court has held that a seizure occurs when a police officer restrains an individual's freedom either by a show of authority or use of physical force. *Terry v. Ohio* 392 U.S. 1, 19 n. 16 (1968). In *U.S. v. Mendenhall*, the Supreme Court held that a seizure occurs when in light of the totality of the

circumstances of a police-citizen encounter a reasonable person would believe that they were not free to leave. 446 U.S. 544, 554 (1980). Factors that could indicate a seizure include the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice" that would convey to a reasonable person that compliance was mandatory. *Id*.

Here, based on the allegations in the STAC, Plaintiff was not asked to remain seated on her couch by the deputies in question but rather forced to do so, until she was able to grab her video camera. *See* Suppl. TAC (dkt. 83) at 5-6. In addition, Plaintiff contends that she was seized again and "forced to [go to] the emergency room" by the officers. *Id.* Thus, Plaintiff's allegations are of the seizure of her person at least once, and of her phone, and the next question is whether it was objectively reasonable under the circumstances for the officers to do so.

To determine whether a detention incident to a search is constitutionally reasonable, courts balance the law enforcement interests served by the detention against the individual's interests to be free from governmental intrusions. *Ganwich v. Knapp,* 319 F.3d 1115, 1120 (9th Cir. 2003). Even in the criminal context, once legitimate justifications for a detention pursuant to a warrant can fade. *See Leveto v. Lapina*, 258 F.3d 156, 171 (3d Cir. 2001) (noting that the need to detain an individual during a search to prevent the destruction of evidence at another location is minimized once a search in the other location is underway.) Moreover, police "do not have unfettered authority to detain a building's occupants in any way they see fit." *Dawson*, 435 F.3d at 1066.

To justify Plaintiff's detention, Officer Defendants cite to inapposite cases involving the clear evidence of danger, the need to prevent flight, the need to prevent destruction of evidence, or some combination of these interests. First, Officer Defendants cite *Muehler v. Mena,* a case involving a drive-by shooting in which the risk of serious danger justified detaining a bystander in handcuffs while officers conducted a search. *Muehler v. Mena*, 544 U.S. 93, 100-02, 125 (2005) ("*But this was no ordinary search*. The governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises. In such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants.") (emphasis added). Second,

Officer Defendants cite *Summers*, a case involving a narcotics search in which the Court found that the detention during the search was justified based on the following law enforcement interests: (1) preventing flight in the event that incriminating evidence is found; (2) minimizing the risk of harm to the officers and the occupants; and (3) facilitating the orderly completion of the search. *See Summers,* 452 U.S. at 702-03. The *Summers* Court provided a fourth reason why detentions in searches for drugs are justified – the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Id*. at 703. Third, Officer Defendants cite *Dawson* because it involved an administrative warrant authorizing the search of a boardinghouse to inspect the premises for health code violations. *Dawson*, 435 F.3d at 1054. That case, too, involved concerns of violence, flight prevention, and a potential need for occupant-assistance in searching the premises. *Id.* To quote the *Dawson* court:

> [I]n *Muehler* the police were investigating a drive-by shooting and the police were concerned that they might encounter one or more armed gang members. Here, there were parallel concerns about possible violence because the Seattle police had reason to think that Keith Gilbert might try to prevent the Department of Public Health (DPH) inspection by violently resisting or attacking the DPH inspection team or their police escorts. Under these circumstances, it was reasonable for the police to enter the boardinghouses aggressively and drawing their sidearms, as was indicated by Plaintiffs' testimony, would not render the detention unreasonable.

*Id.* at 1065.

Here, the rationales justifying detention and seizures in criminal cases are absent. First, the Officer Defendants had no need to prevent flight. As Plaintiff explains, she could not leave and had no reason to leave. Pl.'s Opp. (dkt. 87) at 6-7. Second, regarding concerns about violence, this case falls on the opposite end of the spectrum relative to cases like *Mena*, *Summers*, and even *Dawson*. Plaintiff is a "92-pound female in her home with her two young children, there was NO RISK of harm to 6 sheriffs with weapons and two CWS workers." *Id.* Third, regarding the orderly completion of the search as well as evidence preservation, Officer Defendants were not concerned about evidence collection or preservation in this case, as they were only there to accompany the social workers. Plaintiff also explains that it "took less than one minute for officers to walk through Plaintiff's small home and see that it was clean and safe and children were healthy," suggesting that the detention extended far longer than needed for the interview authorized by the

warrant. *Id*. "Where 'a safe and efficient search' is not the primary purpose of the officers' actions, *Summers*'s justification for bypassing the Fourth Amendment's traditional protections disappears, just as the justifications for doing so disappear – and so bypass of the usual Fourth Amendment requisites becomes impermissible – in inventory and administrative search cases." *Perez Cruz v. Barr*, 926 F.3d 1128, 1141 (9th Cir. 2019). Taking the allegations in the STAC as true, the alleged seizure of her person and phone cannot be dismissed as reasonable at this juncture.

In addition to suggesting that Plaintiff does not have a cognizable Fourth Amendment claim, Officer Defendants further argue for dismissal based on qualified immunity. They argue that they have a categorical right pursuant to the search warrant to order her to remain on the couch and seize her phone. Officer Defendants also argue that at the time of the alleged constitutional violation (i.e. the seizure of Plaintiff's phone), there was no clearly established right such that Officer Wilcox was on notice that the taking of a mother's phone out of her hand during a child welfare investigation was constitutionally impermissible. However, there is caselaw on point regarding the unconstitutionality of seizing a phone during a search, particularly in light of the child welfare context of this search. For example, *Ganwich v. Knapp* involved a search for evidence of conduct by a business that was deceptive or unfair to consumers. 319 F.3d 1115. In that case, the Ninth Circuit rejected the defendant's argument that "the underlying justifications for detaining the plaintiffs were to prevent flight in the event incriminating evidence was found, to minimize the risk of harm to the officers, and to further the orderly completion of the search." *Id.* at 1120. Aside from illegal detention, "[a]n additional aspect of the officers' conduct was objectionable under the Fourth Amendment: their preventing the plaintiffs from making a telephone call for extended times during the detention." *Id.* at 1123. The Ninth Circuit concluded that "it does not appear that the officers' depriving the plaintiffs of telephone access could be justified by legitimate law enforcement interests for more than a fraction of the detention." *Id.* Accordingly, *Ganwich* establishes that denying a plaintiff access to a phone during a search authorized by a criminal warrant, even without physically taking the phone itself from plaintiff's possession, can constitute a Fourth Amendment violation.

Moreover, Plaintiff has provided enough facts to state a claim that she was impermissibly

seized when she was forced to sit on couch and when she was forced to go to emergency room. This claim cannot be dismissed under qualified immunity because such seizures are clearly established. *See e.g. Fla. v. Bostick*, 501 U.S. 429, 434 (1991) ("The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in *Terry v. Ohio* . . . '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.'") (quoting *Terry v. Ohio* 392 U.S. 1, 19 n. 16, 88 (1968)).

Thus, Plaintiff has alleged enough facts regarding Officer Wilcox's seizure of the phone, being forced to sit on her couch, and being forced to go to the hospital, to state a claim against the Officer Defendants. Also, at this early stage, the qualified immunity argument is unpersuasive in light of the specific facts and circumstances of this seizure or these seizures as alleged in the STAC. Accordingly, the Officer Defendants' Motion (dkt. 82) is herewith **DENIED** without prejudice to the Officer Defendants being able to re-raise the issue of qualified immunity at a later stage in the proceedings.

## CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss (dkts. 82, 85) are **DENIED** and Defendants are directed to file an answer within 14 days of the date of this order. An initial Case Management Conference is set for 1:00 p.m. on October 6, 2020.

**IT IS SO ORDERED.**

Dated: August 20, 2020

ROBERT M. ILLMAN
United States Magistrate Judge